Opinion by Judge IKUTA; Dissent by Judge WARDLAW.
IKUTA, Circuit Judge:
This appeal raises a First Amendment challenge to Redondo Beach Municipal Code § 3-7.1601, which prohibits the act of standing on a street or highway and soliciting employment, business, or contributions from the occupants of an automobile. We have previously upheld a virtually identical ordinance against a constitutional challenge. See ACORN v. City of Phoenix, 798 F.2d 1260, 1273 (9th Cir.1986). We reach the same result here and hold that the Redondo Beach ordinance is a valid time, place, or manner restriction. Accordingly, we reverse the contrary decision of the district court.
I
The facts giving rise to this controversy can be traced back to ACORN, where the Association of Community Organizations for Reform Now (ACORN), a non-profit political action organization, raised a First and Fourteenth Amendment challenge to a Phoenix ordinance that read: “No person shall stand on a street or highway and solicit, or attempt to solicit, employment, business or contributions from the occupants of any vehicle.” Id. at 1262. According to ACORN, the challenged or *1181 dinance deterred its members from “tagging.” As we explained, “[flagging ... involves an individual stepping into the street and approaching an automobile when it is stopped at a red traffic light. The individual asks the occupants of the vehicle for a contribution to ACORN and distributes a slip of paper, or ‘tag,’ providing information about ACORN and its activities.” Id.
We determined that the restrictions imposed by the Phoenix ordinance were content neutral, narrowly tailored to serve a significant government interest, and left open ample alternative channels of communication. Id. at 1267-71. Accordingly, we concluded that the ordinance was a reasonable time, place, or manner restriction which did not violate ACORN’s First Amendment rights. Id. at 1273. We also rejected ACORN’s argument that the ordinance was facially overbroad because it would deter not only ACORN’s tagging at intersections, but also persons soliciting “on the sidewalks of Phoenix, during parades or demonstrations, or on streets closed to vehicle traffic.” Id. at 1272. Because the ordinance was narrow, and prohibited “only solicitation in the streets ‘from the occupants of any vehicle,’ ” id., we concluded that ACORN’s overbreadth argument ran “completely contrary to the language of the ordinance,” id. at 1273.
Some eight months after we decided ACORN, Redondo Beach’s city attorney proposed that the city adopt an ordinance “identical to one recently approved by the 9th circuit court of appeals.” A memorandum from the city attorney to the mayor explained that “the City has had extreme difficulties with persons soliciting employment from the sidewalks along the Artesia corridor over the last several years.... There can be little question that traffic and safety hazards occur by this practice.” A later memorandum by the same city attorney stated that the “ordinance was designed to alleviate sidewalk congestion and traffic hazards which occurred when large numbers of persons congregated on the sidewalks during the rush hours to obtain temporary employment.”
Using ACORN as a guide in drafting its own ordinance, Redondo Beach enacted Redondo Beach Municipal Code § 3-7.1601, which provides:
It shall be unlawful for any person to stand on a street or highway and solicit, or attempt to solicit, employment, business, or contributions from an occupant of any motor vehicle. For purposes of this section, “street or highway” shall mean all of that area dedicated to public use for public street purposes and shall include, but not be limited to, roadways, parkways, medians, alleys, sidewalks, curbs, and public ways.[1]
The first sentence of the Redondo Beach ordinance is identical to the operative language of the Phoenix ordinance from ACORN. See 798 F.2d at 1262. The second sentence adds the California Vehicle Code’s definitions of “street,” and “highway.” See Cal. Veh.Code §§ 360, 590 (2009). In 1989, Redondo Beach added subsection (b) imposing a correlative restriction on drivers. It states: “It shall be unlawful for any person to stop, park or stand a motor vehicle on a street or highway from which any occupant attempts to hire or hires for employment another person or persons.” As the city attorney explained in an earlier memorandum, “[b]y adopting this amendment, both the prospective employee and employer would be subject to a misdemeanor offense for soliciting the other from a street or highway.”
*1182 After passage of the ordinance, Redondo Beach continued to experience traffic problems related to persons soliciting employment from automobiles at two of the city’s intersections. In October 2004, Redondo Beach undertook “an enhanced effort” to enforce the Redondo Beach ordinance at these two intersections. Throughout October and November 2004, Redondo Beach police officers, sometimes posing as potential employers, arrested multiple persons for violating subsection (a) of the ordinance, and cited one person for violating subsection (b). According to the officer who was in charge of the enforcement project, “[d]ay laborers were only contacted and arrested when they were on the sidewalk and approached a stopped vehicle. The prospective employer who was charged with violation of Municipal Code Section 3-7.1601(b) was contacted because he stopped in a traffic lane to conduct a hiring discussion with day laborers.”
On November 16, 2004, Comité de Jornaleros de Redondo Beach (Comité) and the National Day Laborer Organizing Network (NDLON) filed this suit in district court. Comite identifies itself as “an unincorporated association comprised of day laborers who ... regularly seek work in the City of Redondo Beach,” and NDLON identifies itself as “a nationwide coalition of day laborers and the agencies that work with day laborers.” Their complaint alleged that the Redondo Beach ordinance deprived them and others of free speech rights guaranteed by the First and Fourteenth Amendments, and sought injunctive, monetary, and declarative relief under 42 U.S.C. § 1983 and 28 U.S.C. § 2201. The district court issued a temporary restraining order, and later a preliminary injunction barring enforcement of the Redondo Beach ordinance. We affirmed the preliminary injunction in an unpublished memorandum disposition. 127 Fed. Appx. 994 (9th Cir.2005).
Both plaintiffs and Redondo Beach moved for summary judgment, which the district court addressed in a published opinion. 475 F.Supp.2d 952 (C.D.Cal. 2006). The district court held that the Redondo Beach ordinance was content neutral, but was nevertheless invalid because (1) it was not “narrowly tailored to promote [Redondo Beach’s] interests in traffic flow and safety,” and (2) it “failed to establish the existence of ample alternative channels of communication.” Id. at 966-68. Accordingly, the district court granted the plaintiffs’ motion for summary judgment, permanently enjoined Redondo Beach from enforcing its ordinance, and ordered that “all fines, penalties, or records of infractions” of the Redondo Beach ordinance “be rescinded or removed and restitution provided.” Id. at 970. Redondo Beach timely appealed. The district court subsequently granted Redondo Beach’s motion to stay the order granting partial relief pending resolution of the appeal. The district court also awarded attorneys’ fees to plaintiffs pursuant to 42 U.S.C. § 1988, which Redondo Beach has also timely appealed.
We review de novo the district court’s grant of summary judgment in favor of NDLON. See, e.g., ACLU of Nevada v. City of Las Vegas (ACLU II), 466 F.3d 784, 790 (9th Cir.2006). When considering a motion for summary judgment, we view the evidence in the light most favorable to the nonmoving party, and draw “all justifiable inferences” in that party’s favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
II
Redondo Beach makes the threshold argument that Comité and *1183 NDLON lack standing to challenge the ordinance. To have standing under Article III, a plaintiff must have suffered an “injury in fact,” defined as “an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent.” Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (citations and internal quotation marks omitted). There also must be a causal connection between the injury and the defendant’s conduct, and the injury must be redressable by a favorable decision. Id. at 561, 112 S.Ct. 2130. Here Redondo Beach argues that Comite and NDLON fail to satisfy the Article III injury-in-fact requirement.
An organization may establish a sufficient injury in fact if it substantiates by affidavit or other specific evidence that a challenged statute or policy frustrates the organization’s goals and requires the organization “to expend resources in representing clients they otherwise would spend in other ways.” El Rescate Legal Sens., Inc. v. Executive Office of Immigration Review, 959 F.2d 742, 748 (9th Cir.1992); see also Fair Housing of Marin v. Combs, 285 F.3d 899, 904-05 (9th Cir.2002). But “standing must be established independent of the lawsuit filed by the plaintiff.” Walker v. City of Lakewood, 272 F.3d 1114, 1124 n. 3 (9th Cir.2001).
NDLON has met the burden to establish its standing as an organization. The record contains declarations of NDLON officials that enforcement of the Redondo Beach ordinance has frustrated NDLON’s mission “to strengthen and expand the work of local day laborer organizing groups” because it “has prevented day laborers from making their availability to work known in the City of Redondo Beach.” Moreover, the ordinance has discouraged both employees and employers from participating in hiring transactions. Redondo Beach has offered no evidence to dispute these claims. NDLON also has offered uncontradicted evidence that enforcement of the ordinance has forced it to divert resources, independent of expenses for this litigation, that it would have spent in other ways. NDLON’s west coast coordinator testified that she met with workers at the intersections targeted by Redondo Beach to discuss enforcement of the ordinance almost daily from the end of October 2004 until mid-December 2004, and weekly thereafter through June 2005. She also testified that she went to the police station to assist day laborers who had been arrested. NDLON’s national coordinator testified that the time and resources spent in assisting day laborers during their arrests and meeting with workers about the status of the ordinance would have otherwise been expended toward NDLON’s core organizing activities. In sum, NDLON has established a sufficient organizational injury for standing purposes. See El Rescate, 959 F.2d at 748.
Because there is a causal connection between Redondo Beach’s ordinance and NDLON’s injury, and NDLON’s injury would be redressable by a favorable decision, we conclude that NDLON has standing to bring this appeal. Accordingly, we have jurisdiction over this facial challenge irrespective of Comite’s standing. “Where the legal issues on appeal are fairly raised by one plaintiff [who] had standing to bring the suit, the court need not consider the standing of the other plaintiffs.” Planned Parenthood of Idaho, Inc. v. Wasden, 376 F.3d 908, 918 (9th Cir.2004) (alteration in original) (internal quotation marks omitted). Therefore, we do not address the parties’ remaining standing arguments, including Redondo Beach’s evidentiary arguments. For ease of reference, we will refer to the appellees in this case collectively as NDLON.
*1184 III
The First Amendment guarantees that “Congress shall make no law ... abridging the freedom of speech.”[2] The Supreme Court has made clear, however, that:
even in a public forum the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions “are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.”
Ward v. Rock Against Racism, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) (quoting Clark v. Cmty. for Creative Non-Violence, 468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984)).[3]
Redondo Beach’s ordinance regulates solicitation, which we have long recognized is a form of expression that consists of both expressive content and associated conduct or acts. The “words” component of solicitation includes both written and spoken communications. See ACLU II, 466 F.3d at 793-94. The “acts” component of solicitation includes the conduct of the person soliciting (e.g., in-person demands requiring an immediate response, such as approaching a person or vehicle “and demanding a personal response,” ACORN, 798 F.2d at 1269 n. 8). It also includes the effects of such conduct, such as impeding the flow of traffic, causing the target of solicitation to dodge an “implied threat of physical touching,” Hill v. Colorado, 530 U.S. 703, 724, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000), and other “disruption and delay caused by solicitation,” United States v. Kokinda, 497 U.S. 720, 734, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990). See Int’l Soc’y for Krishna Consciousness, Inc. v. Lee, 505 U.S. 672, 683-84, 705, 112 S.Ct. 2701, 120 L.Ed.2d 541 (1992) (“Passengers who wish to avoid the solicitor may have to alter their paths, slowing both themselves and those around them.”). The dual nature of solicitation does not change the fact that solicitation is a form of expression and “[e]xpression, whether oral or written or symbolized by conduct, is subject to reasonable time, place, or manner restrictions.” Clark, 468 U.S. at 293, 104 S.Ct. 3065.[4]
*1185 The issue here is whether Redondo Beach’s ordinance was a valid limitation on speech. As in ACORN, we will assume that the streets of Redondo Beach constitute a perpetual public forum, even when they are in use by vehicular traffic. 798 F.2d at 1267; see Frisby v. Schultz, 487 U.S. 474, 481, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988) (“[A]ll public streets are held in the public trust and are properly considered traditional public fora.”). Accordingly, we must consider whether the Redondo Beach ordinance is content neutral, narrowly tailored to serve a significant governmental interest, and leaves open ample alternative channels for communication of information. Clark, 468 U.S. at 293, 104 S.Ct. 3065. NDLON, in its cross-appeal, argues that the district court erred in concluding that the ordinance was content neutral, while Redondo Beach argues that the district court erred in holding that the ordinance was not narrowly tailored and that ample alternative channels of communication were lacking. ■ We consider these arguments in turn, mindful of the Supreme Court’s direction that we may, and generally should, construe an enactment in a manner that will allow us to uphold its constitutionality. See City of Lakewood v. Plain Dealer Publ’g Co., 486 U.S. 750, 770 n. 11, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988) (“[T]his court will presume any narrowing construction or practice to which the law is fairly susceptible.” (internal quotation marks omitted)).
A
We have held that restrictions on acts of solicitation that were passed to support legitimate government concerns unrelated to suppressing any particular message are content neutral. See ACLU II, 466 F.3d at 794 & n. 10 (noting that “courts have held that bans on the act of solicitation are content-neutral,” while courts have, determined, that bans separating out “words of solicitation for differential treatment” are content based (citing eases)); see also Berger v. City of Seattle, 569 F.3d 1029, 1051 (9th Cir.2009) (en banc) (stating that “regulations that ban certain conduct associated with solicitation do not violate the prohibition on content-based regulation of speech”). Indeed, this principle is well grounded in Supreme Court precedent, which establishes that a regulation affecting speech-related activities is content neutral if it “serves purposes unrelated to the content of expression ... even if it has an incidental effect on some speakers or messages but not others.” Ward, 491 U.S. at 791, 109 S.Ct. 2746.
Justice Kennedy made this point in his concurring opinion in Lee, 505 U.S. at 705, 112 S.Ct. 2701, which we have relied on in ACLU II, 466 F.3d at 795, and Berger, 569 F.3d at 1050. In Lee, Justice Kennedy interpreted the Port Authority’s ban on solicitation in an airport as being aimed at abusive acts associated with the physical exchange of money, described as *1186 “an element of conduct interwoven with otherwise expressive solicitation.” 505 U.S. at 705, 112 S.Ct. 2701 (Kennedy, J., concurring). Because the Port Authority’s regulation prohibiting solicitation was “directed at these abusive practices and not at any particular message, idea, or form of speech, the regulation [was] a content-neutral rule serving a significant government interest.” Id. at 706, 112 S.Ct. 2701. In sum, where a regulation is aimed at actions entwined with expressive content, the principal inquiry is whether “restrictions of this kind ... are justified without reference to the content of the regulated speech.” Clark, 468 U.S. at 293-94, 104 S.Ct. 3065 (citing cases).
A restriction aimed at conduct does not satisfy this content neutrality test, however, when the restriction “by its very terms, singles out particular content for differential treatment.” Berger, 569 F.3d at 1051; see ACLU II, 466 F.3d at 794. For example, in ACLU II we concluded that a municipal ordinance prohibiting solicitation throughout a five-block tract of downtown Las Vegas was content based. 466 F.3d at 796.[5] Although we determined that the “uncontroverted evidence supports that the ordinance was enacted with the purpose of controlling the secondary effects of solicitation, rather than the content of the soliciting requests themselves,” id. at 793, we held the ordinance nevertheless “discriminates based on content on its face” because it prohibited the distribution of handbills “requesting financial or other assistance” while permitting the distribution of handbills that did not make such a request, id. at 794.
We came to a similar conclusion in Berger. There, we analyzed a rule that prohibited street performers from “actively soliciting] donations” at the Seattle Center. Berger, 569 F.3d at 1035.[6] We acknowledged that Seattle passed the rule for the content-neutral purpose of “protecting] Center patrons from harassment” caused by active solicitation conduct, id. at 1051, but held that the ordinance was content based because on its face it differentiated between messages. Specifically, the ordinance “restricted] street performers from communicating a particular set of messages — requests for donations, such as ‘I’d like you to give me some money if you enjoyed my performance,’ ” but did not prohibit street performers from actively communicating other messages. Id. We stated that while “this distinction [may be] innocuous or eminently reasonable, it is still a content-based distinction because it ‘singles out certain speech for differential treatment based on the idea expressed.’ ” Id. (quoting ACLU II, 466 F.3d at 794).
Distilling these cases, we derive the general rule that an ordinance regulating solicitation is content neutral if it is aimed at acts of solicitation and “not at any particular message, idea, or form of speech,” Lee, 505 U.S. at 706, 112 S.Ct. 2701 (Kennedy, J., concurring). An ordinance that “by its very terms, singles out particular content for differential treatment” does not satisfy this test. See Berger, 569 F.3d *1187 at 1051. With these principles in mind, we analyze Redondo Beach’s ordinance.
There is no meaningful distinction between the Phoenix and Redondo Beach ordinances, and therefore we are bound by our determination in ACORN that the Phoenix ordinance was content neutral because it was aimed narrowly at barring acts of solicitation directed toward the occupants of vehicles, 798 F.2d at 1273, and was not related to any particular message or content of speech, id. at 1267. Indeed, the language of the two ordinances is identical in all material respects. Although Redondo Beach’s ordinance mentions “sidewalks,” and the Phoenix ordinance does not, this difference is immaterial because ACORN interpreted the Phoenix ordinance as applying to persons soliciting vehicles from the sidewalk, as well as those soliciting from the street. Id. at 1269 n. 9; see infra at 1190. Similarly, while the Redondo Beach ordinance applies .to the conduct of potential employers while the Phoenix ordinance does not, this distinction does not affect the scope of prohibited conduct, i.e., in-person demands directed at drivers that require an immediate response.
Nor does the record include evidence of any “binding judicial or administrative construction, or well-established practice” suggesting that Redondo Beach has adopted an interpretation different from that described in ACORN. Santa Monica Food Not Bombs v. City of Santa Monica, 450 F.3d 1022, 1035 (9th Cir.2006) (internal quotation marks omitted). Redondo Beach’s enforcement efforts have focused exclusively on conduct without reference to content. The record establishes that officers charged only individuals who “solicit[ed] vehicles so as to cause a driver to stop in traffic,” or who “approached a stopped vehicle” when the vehicle was “stopped in a traffic lane.” Those who “solicit[ed] from behind the sidewalk line in adjacent shopping centers’ parking lots [were] not regulated by the Ordinance.” Redondo Beach also has not prevented people from “leafleting empty parked cars, approaching cars already legally parked in the street, or- holding up signs to be seen by passing cars.” No one has been arrested for communicating a message by means that did not adversely affect traffic. Although the dissent notes that persons soliciting contributions challenged the Phoenix ordinance, while persons soliciting employment brought the challenge here, see Dissent at 1202, the dissent fails to explain why this makes a difference for purposes of a First Amendment analysis. So long as the ordinance targets conduct unrelated to the content of the message, it does not matter whether the ordinance impacts sot licitation undertaken to secure employment, as in Redondo Beach, or to secure contributions, as in Phoenix. Because there is no meaningful distinction between the Phoenix ordinance and the Redondo Beach ordinance as drafted, interpreted, and enforced, we conclude that the Redondo Beach ordinance is likewise aimed at acts, does not single out particular ideas for differential treatment, and is content neutral. See Forsyth County v. Nationalist Movement, 505 U.S. 123, 131, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992) (“In evaluating respondent’s facial challenge, we must consider the county’s authoritative constructions of the ordinance, including its own implementation and interpretation of it.”); see also Ward, 491 U.S. at 795-96, 109 S.Ct. 2746 (“Administrative interpretation and implementation of a regulation are, of course, highly relevant to our analysis, for in evaluating a facial challenge to a state law, a federal court must consider any limiting construction that a state court or enforcement agency has proffered.” (alterations and internal quotation marks omitted)).
*1188 NDLON raises two challenges to this conclusion. First, NDLON argues that the ordinance differentiates between messages because it prohibits individuals from conveying the message “I need a job” while allowing the message “I need a vote.” Second, NDLON asserts that the ordinance singles out three categories of speech (employment, business, or contributions) for regulation while leaving other categories free from censor.
Both of these arguments are foreclosed by ACORN and Berger. As we explained in Berger, the type of ordinance at issue in ACORN and in this case does not restrict words of solicitation or forbid “passing out handbills asking car drivers or passengers to contribute by mail to a charity or cause.” Berger, 569 F.3d at 1052 n. 23. Rather, it is aimed at acts of on-the-spot solicitation. Id. An ordinance aimed at acts of solicitation rather than words “is not a content-based regulation of speech, and so does not run afoul of the content neutrality requirement.” Id.-, see ACLU II, 466 F.3d at 795.
NDLON’s second argument, that the Redondo Beach ordinance is not content neutral because it singles out three categories of speech (employment, business or contributions) for regulation, similarly fails in light of ACORN and Berger. Moreover, an ordinance does not single out specific messages for different treatment merely because it regulates broad categories of communication. In Hill, the Supreme Court held that Colorado’s ban on “oral protest, education, or counseling” near health care facilities without the consent of the listener is not content based. 530 U.S. at 724, 120 S.Ct. 2480. According to the Court, such an ordinance “places no restrictions on — and clearly does not prohibit — either a particular viewpoint or any subject matter that may be discussed by a speaker.” Id. at 723, 120 S.Ct. 2480. Rather, it simply “establishes a minor place restriction on an extremely broad category of communications.” Id. When an ordinance is framed as applying to such broad categories of communication, it does not “draw[ ] distinctions based on the subject that the approaching speaker may wish to address.” Id. Like the enactment at issue in Hill, Redondo Beach’s ordinance establishes a place restriction on particular manners of expression that fall within certain broad categories, but does not impose limitations based on disagreement with the message’s content.
NDLON argues that because a police officer enforcing the Redondo Beach ordinance must listen to the content of the speech to determine whether it falls within an impermissible or a permissible category, it fails the “officer must read it” test. NDLON refers to Foti v. City of Menlo Park, 146 F.3d 629 (9th Cir.1998), which held that a restriction is content based if “a law enforcement officer must examine the content” of the speaker’s message to determine whether it falls within the restriction. Id. at 636 (internal quotation marks omitted); see ACLU II, 466 F.3d at 794-96.
NDLON’s reliance on the “officer must read it” test is misplaced. Two years after we decided Foti the Supreme Court clarified in Hill that it has “never held, or suggested, that it is improper to look at the content of an oral or written statement in order to determine whether a rule applies to a course of conduct.” Hill, 530 U.S. at 721, 120 S.Ct. 2480 (emphasis added). Instead, “the kind of cursory examination” of the content of a conversation to determine whether it includes “oral protest, education, or counseling” does not make a regulation content based. Id. at 721-22, 120 S.Ct. 2480; see ACLU II, 466 F.3d at 796 n. 12. Similarly, Berger noted that the “officer must read it” test is only *1189 “evidence that the regulation is content-based ... not dispositive” of it. 569 F.3d at 1052 n. 22. Given the clear instructions in Hill and Berger, the “officer must read it” test is limited to those situations where an officer must conduct something more than a cursory examination of the content of a communication, such as where the officer must thoroughly review the communication to evaluate its “substantive message” or “idea expressed.” ACLU II, 466 F.3d at 794, 796 n. 12 (internal quotation marks omitted). Like the ordinance upheld in Hill, the Redondo Beach ordinance regulates broad categories of expression which require an officer to make only a cursory examination of the solicitor’s communication, not a substantive evaluation of a speaker’s message. Therefore, the “officer must read it” test, as formulated in ACLU II and Berger, does not support NDLON’s argument that the Redondo Beach ordinance must be content based.
B
We next turn to the question whether the Redondo Beach ordinance is “narrowly tailored to serve a significant governmental interest.” Clark, 468 U.S. at 293, 104 S.Ct. 3065. A regulation is narrowly tailored if it “promotes a substantial government interest that would be achieved less effectively absent the regulation.” Ward, 491 U.S. at 798-99, 109 S.Ct. 2746 (internal quotation marks omitted). “So long as the means chosen are not substantially broader than necessary to achieve the government’s interest, however, the regulation will not be invalid simply because a court concludes that the government’s interest could be adequately served by some less-speech-restrictive alternative.” Id. at 799,109 S.Ct. 2746.[7]
NDLON does not dispute the district court’s holding that “it is virtually axiomatic that the City has a ‘significant’ interest in traffic flow and safety.” 475 F.Supp.2d at 964. Nor could it raise any serious challenge to this well-established principle. See, e.g., Schenck v. Pro-Choice Network of W. N.Y., 519 U.S. 357, 376, 117 S.Ct. 855, 137 L.Ed.2d 1 (1997) (recognizing the government’s substantial interest in “promoting the free flow of traffic on streets and sidewalks”); Long Beach Area Peace Network v. City of Long Beach, 574 F.3d 1011, 1022 (9th Cir.2009) (recognizing “a somewhat greater governmental interest in regulating expressive activity on city streets because of the public safety concerns raised by vehicular traffic”). Thus, we agree with the district court that Redondo Beach has a substantial interest in promoting traffic flow and safety.
We now consider whether the Redondo Beach ordinance is narrowly tailored to serve this significant interest. A regulation may be narrowly tailored for First Amendment purposes even if it restricts more speech or conduct than is absolutely necessary. See Hill, 530 U.S. at 726, 120 S.Ct. 2480 (holding that “when a content-neutral regulation does not entirely foreclose any means of communication, it may satisfy the tailoring requirement even though it is not the least restrictive or least intrusive means of serving the statutory goal” (footnote omitted)); Ward, 491 U.S. at 798, 109 S.Ct. 2746 (holding that “a regulation of the time, place, or manner of protected speech must be narrowly tailored to serve the government’s legitimate, *1190 content-neutral interests but that it need not be the least restrictive or least intrusive means of doing so”).
In ACORN, we determined that the Phoenix ordinance was “narrowly tailored to address legitimate traffic safety concerns.” 798 F.2d at 1270. We agreed with Phoenix’s determination that “[t]he distraction of motorists occasioned by solicitation not only threatens to impede the orderly flow of traffic, but also raises serious concerns of traffic and public safety.” Id. at 1269. For example, we recognized “the evident dangers of physical injury and traffic disruption that are present when individuals stand in the center of busy streets trying to engage drivers.” Id. (internal quotation marks omitted). We also noted that the solicitation of employment, business, or contributions demanding an immediate response from drivers was more disruptive to traffic flow than the “oral advocacy of ideas, or even the distribution of literature.” See id. at 1268-69. Because the Phoenix ordinance aimed “at the disruptive nature of fund solicitation from the occupants of vehicles,” id. at 1268, and not at “[djirect communication of ideas, including the distribution of literature to occupants in vehicles,” id., we concluded that the Phoenix ordinance was narrowly drawn to address the government’s legitimate concerns, id. at 1270.
Redondo Beach, like Phoenix, contends that the key purposes of the ordinance are to avoid disruptions of traffic and to address safety concerns. 475 F.Supp.2d at 963. Our conclusion in ACORN that solicitation demanding an immediate response from drivers increases the risks of traffic disruption and injury is equally applicable to Redondo Beach. Nothing in the record suggests that solicitation for employment raises a less significant risk of disruption in traffic flow than solicitation for contributions. And, as in ACORN, we find that an ordinance prohibiting in-person demands requiring an immediate response from vehicle occupants, but allowing the distribution of literature to those same occupants, is narrowly tailored to meet traffic and safety concerns. See ACORN, 798 F.2d at 1268. We therefore hold that the Redondo Beach ordinance is narrowly tailored.
We disagree with the district court’s decision that the Redondo Beach ordinance is distinguishable from the Phoenix ordinance because it “sweeps in a much larger amount of ‘solicitation’ speech and speech-related conduct than the ordinance at issue in ACORN.” 475 F.Supp.2d at 964. The district court based this conclusion on the ground that the Redondo Beach ordinance applied to individuals standing on the sidewalk, and could be broadly construed to reach an individual “who merely holds up a sign inviting the occupants of vehicles to drive to a private location to confer.” Id. at 964-65.
In ACORN, we construed the nearly identical Phoenix ordinance as prohibiting solicitation from the sidewalk. 798 F.2d at 1272-73. We noted that the Phoenix ordinance’s prohibition of solicitation while persons were “on” the street, rather than “in” the street, applied “more generally to solicitation occurring in direct proximity to the street,” including from sidewalks. Id. at 1269 n. 9 (italics and internal quotation marks omitted); see id. at 1272-73. We also noted that the “apparent thrust” of the Phoenix ordinance was “to identify the prohibited target of such solicitation — the occupants of vehicles — rather than the location where such conduct occurs.” Id. at 1269 n. 9. Because both the Phoenix and Redondo Beach ordinances, as construed, prohibit solicitors’ in-person demands from the sidewalk to vehicles in the street, the district court erred in distinguishing the Redondo Beach ordinance from the Phoenix ordinance on this basis.
*1191 We also disagree with NDLON and the dissent’s argument that we should disregard ACORN because in that case, we did not consider myriad hypothetical enforcement situations that suggest the ordinance applies more broadly than necessary for traffic safety and flow. ACORNs conclusion regarding a substantially similar ordinance is binding on us, even when a party raises new arguments, absent an intervening en banc or Supreme Court opinion. See United States v. Contreras, 593 F.3d 1135, 1136 (9th Cir.2010) (en banc) (per curiam) (holding that a three-judge panel cannot overrule prior decisions, even if those decisions failed to address arguments regarding the effect of intervening authority); see also CBOCS W., Inc. v. Humphries, 553 U.S. 442, 128 S.Ct. 1951, 1961, 170 L.Ed.2d 864 (2008); Miller, 335 F.3d at 893. In addition, ACORN explicitly rejected an argument similar to NDLON’s, namely “that Phoenix could have equally served its interests through a less restrictive means by prohibiting only solicitation that disrupted traffic.” 798 F.2d at 1270. The argument failed because hypothetical examples of how the government could theoretically apply an ordinance to target “more than the exact source of the ‘evil’ it seeks to remedy,” ACLU II, 466 F.3d at 796 n. 13 (internal quotation marks omitted), are not sufficient to establish inadequate tailoring. See Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 449-50, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008). For the same reason, NDLON’s imaginary concerns that children selling lemonade or Girl Scouts selling cookies outside a school will be impacted by Redondo Beach’s ordinance do not convince us that the ordinance is not narrowly tailored. See Members of City Council of L.A v. Taxpayers for Vincent, 466 U.S. 789, 801, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984) (“[Tjhere must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds.” (emphasis added)).
Further, we reject NDLON’s argument that ACLU II compels the conclusion that the Redondo Beach ordinance is not narrowly tailored. ACLU II held that Las Vegas’s ordinance “targets a substantial amount of constitutionally protected speech that is not the source of the ‘evils’ it purports to combat.” 466 F.3d at 796 n. 13. The Redondo Beach ordinance does not suffer the same constitutional defect. Unlike the Las Vegas ordinance, it is not aimed at the speech component of solicitation, which might include “a substantial amount of constitutionally protected speech.” Id. The Redondo Beach ordinance is aimed at the “acts” component of solicitation; it targets only in-person demands directed at occupants of vehicles, and thus specifically addresses traffic flow and safety, the evils Redondo Beach sought to combat.
Therefore, as indicated by ACORN and our subsequent cases, we conclude that the Redondo Beach ordinance is narrowly tailored to serve Redondo Beach’s significant interests in traffic flow and safety.
C
Third, we consider whether Redondo Beach’s ordinance leaves open alternative avenues of communication. We addressed this issue in ACORN and concluded that the Phoenix ordinance met this criteria because it allowed the distribution of literature, even to occupants of vehicles, and also allowed a range of solicitation methods “including solicitation on the sidewalk from pedestrians, canvassing door-to-door, telephone campaigns, or direct mail.” ACORN, 798 F.2d at 1271.
*1192 We reach the same conclusion here. The alternative avenues of communication identified as adequate in ACORN are also available in Redondo Beach. As in ACORN, the Redondo Beach ordinance permits persons to solicit “business, employment, or contributions” from people on sidewalks or in similar public forums within Redondo Beach, so long as the act does not take place when the target of the solicitation is actually driving in the street.[8] See id. Prospective employers or contributors can park legally and respond to solicitations made by individuals on foot without either party to the transaction violating the ordinance. Therefore, the ordinance does not require solicitors to resort to substitutes like advertising in phone books, newspapers, or by mail, which may require longer lead times and greater financial resources. See Long Beach Area Peace Network, 574 F.3d at 1025 (noting that “we consider the cost and convenience of alternatives” as one factor in the ample alternatives analysis).
The district court held that the alternative avenues of communication identified by Redondo Beach were inadequate because they were not as commercially viable or effective as solicitation in the street. 475 F.Supp.2d at 967-68. But alternative means of expression need not be as effective as the restricted means, so long as the message itself can still reach the intended audience. See One World One Family Now, 76 F.3d at 1014-15 (holding that a Honolulu ordinance banning the sale of merchandise in city streets left open ample alternative channels because the ordinance allowed the plaintiffs to express their message to the intended audience through “handing out literature, proselytizing or soliciting donations,” as well as giving away t-shirts, wearing t-shirts bearing their message, and “sell[ing] [t]-shirts through local retail outlets or by opening their own stores”); see also ACORN, 798 F.2d at 1271 (upholding a restriction on ACORN’s “uniquely effective method of fundraising”). For instance, we held that a restriction which had the effect of banning protests in “a portion of [SeattleJ’s downtown area where protestors could not deliver their message directly to [the World Trade Organization] delegates” left open ample alternative channels of communication because the protestors could make their protests “visible and audible to delegates, even if not as proximate as the protestors might have liked.” Menotti v. City of Seattle, 409 F.3d 1113, 1138 (9th Cir.2005). While the challenged restrictions “were perhaps not ideal for protestors who wanted to present views in the face of delegates,” id. at 1141, we confirmed that “there is no authority suggesting that protestors have an absolute right to protest at any time and at any place, or in any manner of their choosing,” id. at 1138-39.
We have, struck down ordinances for failure to provide alternative means of expression only when they effectively prevent a message from reaching the intended audience. Thus, in Edwards v. City of Coeur d'Alene, 262 F.3d 856 (9th Cir.2001), we invalidated an ordinance banning picket signs carried during parades and public assemblies. Id. at 860. Because the intended audience was “spectators, passersby, and television cameras stationed a good distance away,” we concluded that the alternative channels of communication suggested by the city, including “shouting, *1193 singing, holding a sign in his hands, or leafleting,” would not enable the speaker to reach the intended audience. Id. at 867. “As a general rule, parades and public assemblies involve large crowds and significant noise,” making it “difficult to see more than a few feet in any direction, or to hear anyone who isn’t standing nearby.” Id. Under these circumstances, we held that there was “no other effective and economical way for an individual to communicate his or her message to a broad audience.” Id. (emphasis added).
Unlike Edwards, Redondo Beach has not banned the only effective means to communicate with prospective employers, who can be reached in safer and less disruptive ways than by soliciting drivers in the street. As we have already explained, employment seekers can reach their audience of potential employers by other means. See supra at 1191-92. Accordingly, Redondo Beach has met its burden of demonstrating that the ordinance leaves open ample alternative avenues of communication.
IV
Although the Redondo Beach ordinance is a valid time, place, and manner restriction, NDLON argues that the Redondo Beach ordinance is nevertheless invalid due to vagueness. Specifically, NDLON argues that the ordinance is unconstitutionally vague because it fails to provide adequate notice of what it prohibits and, as a result, chills the speech of advocacy groups.
As the Supreme Court has explained, “[i]t is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined.” Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). A vague enactment may be void for any of three reasons: (1) it fails to give a “person of ordinary intelligence a reasonable opportunity to know what is prohibited”; (2) it “impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application”; or (3) “where a vague statute abut(s) upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of (those) freedoms.” Id. (internal quotation marks omitted).
NDLON locates the Redondo Beach ordinance’s vagueness in its failure to define the words “solicit,” “attempt to solicit,” “contributions,” and “business.” Because of this lack of definition, NDLON asserts that the ordinance offers no guidance to day laborers as to whether they can “stare at cars on the roadway, or approach safely stopped vehicles.” NDLON states that “[a]dvocacy organizations are left to assume that leafleting parked cars, as well as carrying large signs that are directed at pedestrians but visible to passing drivers” are banned by the ordinance. Moreover, NDLON argues that the ordinance lacks guidance as to whether saying the words, “Support Our Cause!” or “Volunteer for Our Organization!” constitutes requests for contributions or employment, and thus “individuals must watch what they say or risk going to jail.”
We cannot invalidate an ordinance for vagueness based on these sorts of hyper-technical, imaginative interpretations and hypothetical concerns. In Hill, the Supreme Court rejected a similar vagueness challenge to a statute restricting the undefined terms “protest, education, or counseling,” near a health care facility. 530 U.S. at 732, 120 S.Ct. 2480. The Court stated:
Petitioners proffer hypertechnical theories as to what the statute covers, such *1194 as whether an outstretched arm constitutes “approaching.” And while “[t]here is little doubt that imagination can conjure up hypothetical cases in which the meaning of these terms will be in nice question,” because we are “[condemned to the use of words, we can never expect mathematical certainty from our language” .... We thus conclude that “it is clear what the ordinance as a whole prohibits.” More importantly, speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid “in the vast majority of its intended applications.”
Id. at 733, 120 S.Ct. 2480 (citations and footnote omitted). Our subsequent cases have rejected similar vagueness challenges to undefined, yet commonly understood terms. See, e.g., Gospel Missions of Am. v. City of L.A, 419 F.3d 1042, 1047-48 (9th Cir.2005) (rejecting a vagueness challenge to the terms “charitable” and “charitable purpose,” and citing cases rejecting other speculative vagueness challenges); Cal. Teachers Ass’n v. State Bd. of Educ., 271 F.3d 1141, 1151-53 (9th Cir.2001) (noting “that ‘instruction’ and ‘curriculum’ are words of common understanding,” and citing cases).
In addition, “otherwise imprecise terms may avoid vagueness problems when used in combination with terms that provide sufficient clarity.” Gammoh v. City of La Habra, 395 F.3d 1114, 1120 (9th Cir.2005). For example, in Gammoh, the ordinance at issue required that adult cabaret dancers perform at least two feet from their patrons. 395 F.3d at 1118. We rejected appellants’ vagueness challenge to the ordinance’s definition of “adult cabaret dancer,” because even though the statute’s definition of “adult cabaret dancer” contained subjective terms, the prohibited activity was defined objectively. See id. at 1120. The clarity of the language defining where activities were prohibited provided adequate notice of what kind of acts were within the scope of the statute. Because “it [was] not illegal to be an adult cabaret dancer[,] only to be an adult cabaret dancer performing within two feet of a patron,” we held that the ordinance was “certainly not vague.” Id.
The same analysis is applicable here. The acts proscribed by the Redondo Beach ordinance are no less clear “in the vast majority of its applications,” Hill, 530 U.S. at 732, 120 S.Ct. 2480, than the activities proscribed by the statute in Hill or other cases rejecting facial vagueness challenges. The ordinance provides “a person of ordinary intelligence fair notice of what is prohibited.” United States v. Williams, 553 U.S. 285, 128 S.Ct. 1830, 1845, 170 L.Ed.2d 650 (2008). In the context of the ordinance as a whole, it is clear that the ordinance prevents acts of solicitation that risk interfering with the flow of traffic. Therefore, it is not reasonable to read the ordinance as preventing day laborers from staring at or approaching legally parked cars, carrying signs, or shouting slogans.
NDLON also argues that people may read the word “solicitation” as banning the distribution of literature requesting donations or employment. We are doubtful that this is a realistic concern. The ordinance as a whole is aimed at uniquely disruptive activities that cause traffic congestion, which would ordinarily not include the unilateral distribution of leaflets. See ACORN, 798 F.2d at 1268. Further, the subsection of the ordinance prohibiting drivers from hiring people on the street indicates that the ordinance targets transactions requiring a response, and not the distribution of literature.
Even if the meaning of the word “solicitation” were not completely clear based on *1195 the context, any residual vagueness would be dispelled by Redondo Beach’s construction of the ordinance, as well as our interpretation of the substantially similar ordinance in ACORN. See Berger, 569 F.3d at 1040 n. 6 (indicating that an ordinance of questionable constitutionality — a permit requirement that applied to an individual speaker — was saved by narrowing constructions in a county executive order and a judicial interpretation). For a vagueness challenge, “we must consider the City’s limiting construction of the ordinance.” Fot% 146 F.3d at 639; see Cal. Teachers Ass’n, 271 F.3d at 1151 (indicating that a statute’s vagueness does not exceed constitutional limits if it is subject to a narrowing construction). As we have explained, see supra part III.A., Redondo Beach’s ordinance prohibits in-person demands requiring an immediate response from drivers in traffic lanes, not the distribution of literature to drivers. Therefore the ordinance’s use of the word “solicit” does not make the ordinance unconstitutionally vague.
Nor do we agree with NDLON’s argument that the ordinance is impermissibly vague because it invites arbitrary or discriminatory enforcement. The undefined terms in the ordinance do not require “wholly subjective judgments without ... narrowing context, or settled legal meanings.” Williams, 128 S.Ct. at 1846. Whether a person is engaged in the act of soliciting contributions, business, or employment from the occupant of a vehicle (or whether the occupant of a vehicle is responding to the same) requires “a true- or-false determination, not a subjective judgment such as whether conduct is ‘annoying’ or ‘indecent.’ ” Id. Without this subjectivity, there is less “danger that a police officer might resort to enforcing the ordinance only against [speakers] whose messages the officer or the public dislikes.” Foti, 146 F.3d at 639 (emphasis added).
V
Finally, we consider the dissent’s argument that ACORN cannot guide our analysis of NDLON’s facial challenge to Redondo Beach’s ordinance because it considered only an as-applied challenge to the Phoenix ordinance and should be confined to its facts. Dissent at 1204-05. Contrary to the dissent’s assertion, ACORN considered and rejected an overbreadth challenge to the Phoenix ordinance. 798 F.2d at 1272. After explaining that the overbreadth doctrine allows parties “whose own conduct may be unprotected” to challenge broadly written statutes that might deter protected conduct of third parties, id. (internal quotation marks omitted), we considered ACORN’s argument that “even if its ‘tagging’ of vehicles stopped at intersections is unprotected, the Phoenix ordinance may be challenged on its face as overbroad because its prohibition extends further to solicitation on the sidewalks of Phoenix, during parades or demonstrations, or on streets closed to vehicle traffic,” id. We rejected ACORN’s argument that the ordinance would deter a range of hypothetical activities by third parties because those theories ran “completely contrary to the language of the ordinance,” id. at 1273, which we construed as prohibiting “only solicitation in the streets from the occupants of any vehicle,” id. at 1272 (internal quotation marks omitted). For this reason, we held that “[t]he ordinance is sufficiently narrow to withstand an over-breadth challenge.” Id. at 1273. ACORN requires us to construe the substantially identical Redondo Beach ordinance in the same manner.
Even if ACORN did not address an overbreadth challenge, as a matter of logic, ACORN’s validation of Phoenix’s statute poses a high barrier to a facial challenge of *1196 any similar ordinance. As the Supreme Court has recently explained, to succeed in “a typical facial attack,” a plaintiff must establish “that no set of circumstances exists under which[the challenged ordinance] would be valid, or that the statute lacks any plainly legitimate sweep.” United States v. Stevens, — U.S.-, 130 S.Ct. 1577, 1587, 176 L.Ed.2d 435 (2010). The bar is lower in the First Amendment context, however, where “a law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute’s plainly legitimate sweep.” Id. (internal quotation marks omitted). Even under this less stringent standard, it is unclear how NDLON could establish that the Redondo Beach ordinance is invalid in a substantial number of its applications when we have already held that the Phoenix ordinance is constitutional in the range of applications identified in ACORN. See ACORN, 798 F.2d at 1273. Although our decision in ACORN would not preclude NDLON from arguing that the Redondo Beach ordinance was unconstitutional as applied to its members’ solicitations, NDLON does not bring such an as-applied challenge here.
VI
We therefore hold that Redondo Beach’s ordinance sweeps no more broadly than the Phoenix ordinance in ACORN Under ACORN, and subsequent cases affirming ACORN’s central holding, we hold that the Redondo Beach ordinance is a reasonable time, place, or manner restriction. The district court erred in determining that it was not bound by ACORN, and as a result erred in holding that the Redondo Beach ordinance was not narrowly tailored and did not leave open ample alternative channels of communication. We also hold that the Redondo Beach ordinance is not unconstitutionally vague. Because we reverse the district court’s summary judgment in favor of appellees and hold that appellants are entitled to summary judgment in their favor, we reverse the district court’s award of attorneys’ fees to appellees.
REVERSED.

. In 1989, this text became subsection (a) of the ordinance.

. Although the text of the First Amendment restricts “Congress,” the right to free speech "is within the liberty safeguarded by the Due Process Clause of the Fourteenth Amendment.” First Nat’l Bank of Boston v. Bellotti, 435 U.S. 765, 779, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978). Accordingly, the First Amendment's limitation on "abridging the freedom of speech” applies to the states and their political subdivisions, such as Redondo Beach. City of Ladue v. Gilleo, 512 U.S. 43, 45 n. 1, 114 S.Ct. 2038, 129 L.Ed.2d 36 (1994).

. Amici contend that the ordinance restricts solicitation that "does no more than propose a commercial transaction,” Bolger v. Young’s Drug Prods. Corp., 463 U.S. 60, 66, 103 S.Ct. 2875, 77 L.Ed.2d 469 (1983) (internal quotation marks omitted), and therefore the ordinance should be analyzed as a regulation of commercial speech. Because the appellants did not argue to the district court or to us that the ordinance imposes restrictions solely on purely commercial speech, however, we decline to address this argument. See, e.g., Dodd v. Hood River County, 59 F.3d 852, 863 (9th Cir.1995). Moreover, we have narrowly interpreted Supreme Court precedents defining commercial speech, holding that unless statutes or ordinances expressly "limit the scope of the regulated activity to purely commercial expression,” S.O.C., Inc. v. County of Clark, 152 F.3d 1136, 1143-44 (9th Cir.1998), such laws must be analyzed as if they imposed restrictions on fully protected speech. Id. Because the Redondo Beach ordinance does not include such an express limitation, we cannot analyze it as commercial speech.

. Because solicitation combines " 'speech' and 'nonspeech' elements,” solicitation could be categorized as expressive conduct. See United States v. O'Brien, 391 U.S. 367, 376, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). The Supreme Court has explained that the government can regulate expressive conduct, id. at 376-77, 88 S.Ct. 1673, and that the test to determine whether such a regulation violates the First Amendment is essentially the same as that articulated in Ward for time, place, and manner restrictions. See Clark, 468 U.S. at 298 & n. 8, 104 S.Ct. 3065; see also Ward, 491 U.S. at 798, 109 S.Ct. 2746. Here, Redondo Beach did not argue that its ordinance was a valid restriction on expressive conduct, so we apply only the test articulated in Ward to determine whether the ordinance is constitutional. 491 U.S. at 791, 109 S.Ct. 2746.

. The ordinance "broadly” defined solicitation as "to ask, beg, solicit or plead, whether orally, or in a written or printed manner, for the purpose of obtaining money, charity, business or patronage, or gifts or items of value for oneself or another person or organization.” Id. at 788, 109 S.Ct. 2746 (internal quotation marks omitted).

. Seattle Center Campus Rule F.3.a states:
“No performer shall actively solicit donations, for example by live or recorded word of mouth, gesture, mechanical devices, or second parties.” Id. at 1050. This rule “does allow performers 'passively' to solicit donations by setting out a receptacle that 'may include a written sign that informs the public that such donations are sought.' ” Id.

. The dissent loses sight of this rule when it states that Redondo Beach’s asserted interests are equally furthered by existing traffic ordinances. Dissent at 1208-09. The question is not whether existing ordinances could advanee the government's legitimate goals, but whether the ordinance at issue is substantially broader than necessary to achieve those goals. Ward, 491 U.S. at 799, 109 S.Ct. 2746.

. Because the Redondo Beach ordinance leaves open ample alternative channels irrespective of the availability of local shopping centers for solicitation, we do not address the parties’ arguments regarding shopping centers’ status as public fora under federal and California law.