**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-counter-defendant-*
        *Appellee,*

    v.

CITY OF ARCATA and CITY OF
EUREKA,
  *Defendants-counter-claimants-*
        *Appellants,*

    v.

ROBERT S. GATES, in his official
capacity as United States Secretary
of Defense; DAVID S. CHU, in his
official capacity as United States
Under Secretary of Defense for
Personnel Readiness,
  *Counter-defendants-Appellees,*

    v.

VOTE YES ON MEASURES F AND J
COMMITTEE,
    *Defendant-intervenor.*

No. 09-16780

D.C. No.
4:08-cv-05725-SBA

OPINION

Appeal from the United States District Court
for the Northern District of California
Saundra B. Armstrong, District Judge, Presiding

Submitted November 4, 2010*
San Francisco, California

---

*The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Filed December 17, 2010

Before: Alex Kozinski, Chief Judge, Pamela Ann Rymer,
Circuit Judge, and Matthew F. Kennelly, District Judge.**

Opinion by Judge Kennelly

---

**\*\*The Honorable Matthew F. Kennelly, United States District Judge for
the Northern District of Illinois, sitting by designation.

---

**COUNSEL**

Joel McElvain, Department of Justice, Washington, DC; Christine Noel Kohl, Department of Justice, Washington, DC; and Scott R. McIntosh, Department of Justice, Washington, DC, for the plaintiff-counter-defendant-appellee and counter-defendants-appellees.

Brad Yamauchi, Minami Tamaki LLP, San Francisco, California; Nancy Diamond, Law Offices of Nancy Diamond, Arcata, California; Michael Sorgen, Law Offices of Michael S. Sorgen, San Francisco, California; and Sheryl Schaffner, City of Eureka, Eureka, California, for the defendants-counter-claimants.

---

**OPINION**

KENNELLY, District Judge:

Two local ordinances, the Arcata Youth Protection Act and the Eureka Youth Protection Act, prohibit agents or employees of the federal government from engaging in military recruitment activities targeting minors. The United States sued to bar enforcement of the ordinances. The district court granted the government's motion for judgment on the pleadings and permanently enjoined the cities of Arcata and Eureka

from enforcing the ordinances. For the reasons stated below, we affirm.

## I.   Facts and Procedural History

The cities of Arcata and Eureka ("the cities") are California municipalities. On November 4, 2008, voters in the cities approved Ballot Measures F and J, which enacted the Arcata and Eureka Youth Protection Acts[1] respectively ("the ordinances"). The ordinances were proposed in response to alleged violations of laws governing military recruitment. The "Findings" contained in each ordinance state that "[m]ilitary recruiters target teens through ad campaigns, mailings, telephone calls, email, and direct personal contact. They promote enlistment by glorifying military service and exaggerating the educational and career benefits, while ignoring the dangers."

The ordinances purport to bar the federal government from "recruit[ing], initiat[ing] contact with for the purpose of recruiting, or promot[ing] the future enlistment of any person under the age of eighteen into any branch of the United States Armed Forces." They also subject military recruiters to civil penalties for each infraction. At the same time, the ordinances specifically exempt "individuals who are not employed by or agents of the U.S. government" from their restrictions. The cities have expressed their intent to enforce the ordinances against the federal government.

On December 23, 2008, the United States brought suit against the cities seeking a declaration that the ordinances are invalid under the Supremacy Clause of the United States Constitution. The cities filed their answer on February 12, 2009, denying that the ordinances are unconstitutional and advancing several affirmative defenses. The cities also counterclaimed for a declaratory judgment upholding the ordinances

---

[1]The parties agree that the Arcata and Eureka ordinances are materially identical.

and for an injunction prohibiting the government from recruiting any Arcata or Eureka resident under the age of seventeen into the military.

The government moved for judgment on the pleadings. It argued that the ordinances violate the doctrine of intergovernmental immunity because they directly regulate and discriminate against the federal government. The government also contended that the ordinances were preempted by federal law. It sought a permanent injunction against the cities' enforcement of the ordinances.

The district court granted the government's motion, declared the ordinances invalid, and permanently enjoined the cities from enforcing them. Among other conclusions, the court found the ordinances unconstitutional because they sought "to subject the conduct of the federal government directly to local government control," thereby violating the doctrine of intergovernmental immunity.

## II.   Discussion

On appeal, the cities challenge for the first time the district court's subject matter jurisdiction. We address this issue before turning to the merits.

### A.   Jurisdiction

The cities presented two jurisdictional arguments in their reply brief. First, the cities argue that the government has not satisfied the injury in fact requirement for Article III standing. Second, the cities assert that because the government's complaint presents only a federal defense and not a federal claim, the government has misused the Declaratory Judgment Act to try to establish federal question jurisdiction where it does not in fact exist.

### 1. Injury in Fact

The cities argue that the government has alleged only a hypothetical negative impact on federal recruiting objectives and thus has not shown the injury in fact necessary to confer standing. The cities do not appear to contest the other two requirements for standing under Article III, causation and redressability. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992).

[1] To demonstrate injury in fact, a plaintiff "must show that [it] is under threat of suffering 'injury in fact' that is concrete and particularized" and "actual and imminent, not conjectural or hypothetical." *Summers v. Earth Island Inst.,* 129 S. Ct. 1142, 1149 (2009). Put another way, "Art[icle] III requires the party who invokes the court's authority to 'show that he personally has suffered some actual *or threatened* injury as a result of the putatively illegal conduct of the defendant.' " *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982) (quoting *Gladstone, Realtors v. Vill. of Bellwood*, 441 U.S. 91, 99 (1979)) (emphasis added). If the plaintiff is not the target of the challenged government action or inaction, "standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." *Lujan*, 504 U.S. at 562 (quoting *Allen v. Wright,* 468 U.S. 737, 758 (1984)).

[2] The government has established Article III standing. This case presents a situation in which the plaintiff—the government—is the sole target of the challenged governmental action. The ordinances expressly forbid agents or employees of the United States from "recruit[ing], initiat[ing] contact with for the purpose of recruiting, or promot[ing] the future enlistment of any person under the age of eighteen into any branch of the United States Armed Forces." The ordinances, which are enforced by civil penalties, proscribe some activity encouraged by federal law. *See, e.g.*, 10 U.S.C. § 503(a)(1) (requiring the military to conduct "intensive recruiting cam-

paigns to obtain enlistments"); 10 U.S.C. § 505(a) (permitting seventeen-year-olds to enlist in the military).

**[3]** It is also undisputed that the cities would enforce the ordinances if they are upheld. The cities conceded in their respective answers that each "intends to enforce its ordinance against all those who violate the ordinance, including but not limited to agents of the federal government." In other words, the ordinances require federal recruiters to alter their conduct or face civil penalties. *Cf. Pub. Utils. Comm'n v. United States*, 355 U.S. 534, 538-39 (1958) (state commission "plainly indicated an intent to enforce" state law regulating rates for transport of federal property, and thus controversy as to whether federal government must comply with statute was "present and concrete"). The cities' adoption and threatened enforcement of the ordinances thus subject the government to an imminent adverse impact. The requirements of Article III are met.

## 2. Misuse of the Declaratory Judgment Act

The cities also argue that the government is misusing the Declaratory Judgment Act to manufacture a federal claim. Framing the government's lawsuit as a "federal preemption defense to a state cause of action," the cities argue that the government has sought to establish the validity of a federal defense without presenting a federal claim, in violation of the well-pleaded complaint rule.

**[4]** "[F]ederal jurisdiction exists only when a federal question is presented on the face of a properly pleaded complaint." *JustMed, Inc. v. Byce,* 600 F.3d 1118, 1124 (9th Cir. 2010) (internal quotation marks omitted). The mere existence of a federal defense to a state law claim is insufficient to create federal jurisdiction over a case. *Louisville & Nat'l R.R. v. Mottley*, 211 U.S. 149, 152 (1908).

**[5]** The well-pleaded complaint rule, however, poses no bar to federal jurisdiction in this case. Congress has, by stat-

ute, provided the district courts with original jurisdiction over "all civil actions, suits or proceedings commenced by the United States." 28 U.S.C. § 1345; *see also United States v. Morros*, 268 F.3d 695, 702-03 (9th Cir. 2001) ("[T]he United States was the plaintiff in the case. Therefore, *regardless of the outcome of federal question jurisdiction*, the district court has independent subject matter jurisdiction under 28 U.S.C. § 1345." (emphasis added)). In this case, the government brought suit and invoked § 1345 in its complaint.

**[6]** The district court also had federal question jurisdiction over the case pursuant to 28 U.S.C. § 1331, which provides the district courts with "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." The government's complaint posed a federal question in its own right because it sought invalidation of the ordinances under federal law. *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983).

For these reasons, we reject the cities' belated contention that federal courts lack subject matter jurisdiction over this case.

## B. The Supremacy Clause

Turning to the merits, the district court held that the ordinances violate the doctrine of intergovernmental immunity, for two reasons. First, the court determined that the ordinances impermissibly seek to regulate the federal government directly. Second, the court found that the ordinances impermissibly discriminate against the federal government. We review these conclusions *de novo* to determine whether, "taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Rose v. Chase Bank USA, N.A.*, 513 F.3d 1032, 1036 (9th Cir. 2008) (internal quotation marks omitted).

**[7]** The doctrine of intergovernmental immunity arose from the Supreme Court's decision in *McCulloch v. Mary-*

*land*, 17 U.S. (4 Wheat.) 316 (1819), which established that "the states have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control, the operations of the constitutional laws enacted by congress to carry into execution the powers vested in the general government." *Id.* at 436. Courts take "a functional approach to claims of governmental immunity, accommodating of the full range of each sovereign's legislative authority." *North Dakota v. United States,* 495 U.S. 423, 435 (1990). A state or local law is invalid "only if it regulates the United States directly or discriminates against the Federal Government or those with whom it deals." *Id.*

**[8]** The district court correctly held that the ordinances violate intergovernmental immunity in both respects. First, the ordinances seek to directly regulate the conduct of agents of the federal government. As noted above, the ordinances—by their express terms—prohibit military recruiters from recruiting or attempting to recruit individuals under the age of eighteen. By constraining the conduct of federal agents and employees, the ordinances seek to regulate the government directly. *See Tennessee v. Davis*, 100 U.S. 257, 263 (1879) (noting that the federal government "can act only through its officers and agents").

We have relied on intergovernmental immunity in refusing to enforce state statutes against the federal government under circumstances far more ambiguous than those present here. For example, in *Blackburn v. United States*, 100 F.3d 1426 (9th Cir. 1996), we declined to subject the federal government to a California statute imposing safety requirements on resorts. *Id.* at 1435. Though the state statute did not target the federal government alone, we nevertheless concluded that "[a]pplication of the [statute] in the present case would violate the Supremacy Clause by constituting a direct and intrusive regulation by the State of the Federal Government's operation of its property at Yosemite." *Id.* Here, the ordinances do not

merely regulate the federal government incidentally; rather, they are expressly intended to do so.

**[9]** For the same reason, the ordinances also discriminate against the United States. "The nondiscrimination rule finds its reason in the principle that the States may not directly obstruct the activities of the Federal Government." *North Dakota*, 495 U.S. at 437-38. The ordinances at issue do not affect the federal government incidentally as the consequence of a broad, neutrally applicable rule. Rather, they specifically target and restrict the conduct of military recruiters. At the same time, the ordinances state that they do not "prevent individuals who are not employed by or agents of the U.S. government from encouraging people under the age of eighteen to join the military." A state or local law discriminates against the federal government if "it treats someone else better than it treats" the government. *Id.* at 438. The cities' differential treatment of identical conduct based on the actor's status as a federal agent or employee fits squarely within this framework.

**[10]** The cities argue that the ordinances merely prohibit conduct "already forbidden" by federal law, including the Optional Protocol to the Convention on the Rights of the Child on the Involvement of Children in Armed Conflict. But the cities offer no authority to support such an exception to the doctrine of intergovernmental immunity. A state or local law that directly regulates the conduct of the federal government or discriminates against it is invalid, even if it is no more restrictive than federal law. In any event, the ordinances here would not fit within any such exception, as they impose greater restrictions on military recruitment than does federal law.

The cities also raise the Tenth Amendment as a defense, arguing that the ordinances represent a valid exercise of the cities' general police powers. The Tenth Amendment provides that "[t]he powers not delegated to the United States by the

Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. But regulating the federal government's military recruitment efforts is not a power reserved to the states. The Constitution expressly provides Congress with the power to "raise and support Armies" and to "make Rules for the Government and Regulation of the land and naval Forces." U.S. Const. art. I, § 8, cls. 12, 14. And the Supreme Court has made clear that the federal government "can determine, without question from any State authority, how the armies shall be raised." *Perpich v. Dep't of Def.*, 496 U.S. 334, 353 n.27 (1990) (quoting *Tarble's Case*, 80 U.S. (13 Wall.) 397, 408 (1872)); *see also New York v. United States*, 505 U.S. 144, 156 1992) ("If a power is delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to the States . . . .").

Finally, the cities asserted in their brief opposing the government's motion for judgment on the pleadings that they will enforce the ordinances only to the extent they are consistent with federal law. As already explained, this does not cure the ordinances' infirmity because there is no exception to the doctrine of intergovernmental immunity for state statutes consistent with federal law. And regardless, the cities' promise of self-restraint does not affect our consideration of the ordinances' validity. *Cf. Powell's Books, Inc. v. Kroger*, 622 F.3d 1202, 1215 (9th Cir. 2010) (permanently enjoining enforcement of state statutes under the First Amendment and rejecting a similar argument: "We may not uphold the statutes merely because the state promises to treat them as properly limited.").

Because we conclude that the ordinances are unconstitutional under the doctrine of intergovernmental immunity, we need not address the government's arguments that Congress has preempted them. We also decline to consider the non-jurisdictional arguments in the cities' reply brief concerning injunctive relief, severability and free speech, because the cit-

ies failed to present them clearly in their opening brief. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("[O]n appeal, arguments not raised by a party in its opening brief are deemed waived.").

## III.  Conclusion

For the foregoing reasons, the judgment of the district court is **AFFIRMED.**