Opinion by Judge MILAN D. SMITH, JR.; Concurrence by Judge RONALD M. GOULD; Special Concurrence by Judge MILAN D. SMITH, JR.; Dissent by Chief Judge ALEX KOZINSKI.
OPINION
M. SMITH, Circuit Judge:
A pair of day-laborer organizations challenge a City of Redondo Beach (Redondo Beach or the City) anti-solicitation ordinance that bars individuals from “standing] on a street or highway and soliciting], or attempting] to solicit, employment, business, or contributions from an occupant of any motor vehicle.” Redondo Beach Municipal Code § 3-7.1601(a) (the Ordinance). We agree with the day laborers that the Ordinance is a facially unconstitutional restriction on speech.
Our analysis is guided by certain well-established principles of First Amendment law. In public places such as streets and sidewalks, “the State [may] enforce a content-based exclusion” on speech if the “regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end.” Perry Educ. Ass’n v. Perry Local Educators’ Ass’n, 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). For content-neutral regulations, the State may limit “the time, place, and manner of expression” if the regulations are “narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.” Id.
We conclude that the Ordinance fails to satisfy the narrow tailoring element of the Supreme Court’s “time, place, and manner” test. The Ordinance is not narrowly tailored because it regulates significantly more speech than is necessary to achieve the City’s purpose of improving traffic safety and traffic flow at two major Redon *941 do Beach intersections, and the City could have achieved these goals through less restrictive measures, such as the enforcement of existing traffic laws and regulations. Because the Ordinance does not constitute a reasonable regulation of the time, place, or manner of speaking, it is facially unconstitutional.
I. FACTS AND PRIOR PROCEEDINGS
A. Factual Background
In September 1986, we upheld a Phoenix ordinance that provided: “ ‘No person shall stand on a street or highway and solicit, or attempt to solicit, employment, business or contributions from the occupants of any vehicle.’ ” ACORN v. City of Phoenix, 798 F.2d 1260, 1262 (9th Cir.1986) (quoting Phoenix City Ordinance § 36-101.01 (1984)). The Phoenix ordinance was designed to prevent members of the political action group ACORN “from accosting the drivers and passengers of automobiles temporarily stopped at red traffic lights at city street intersections to solicit contributions to its cause.” Id. at 1261. We upheld the ordinance as “a reasonable time, place, and manner regulation which preserves the city streets for safe and peaceful use by motorists when the streets are open to vehicle traffic.” Id. at 1273.
Six months later, the Redondo Beach City Attorney recommended that the Redondo Beach City Council adopt a nearly identical ordinance (the sole material difference being that the proposed ordinance defined “street or highway” as including sidewalks, alleys, and other such locations, consistent with California law, see, e.g., Cal. Veh.Code §§ 110, 555). In a memorandum that accompanied the proposed ordinance, the City Attorney noted: “the City has had extreme difficulties with persons soliciting employment from the sidewalks along the Artesia corridor over the last several years. Recent developments have brought to the surface the problems with person[s] using medians and other portions of the street to sell certain products. [¶] There can be little question that traffic and safety hazards occur by this practice.”
In a declaration filed with the district court, a City police officer added that the Redondo Beach Police Department had “received numerous complaints from business owners and residents of the surrounding areas” near “the intersection of Artesia Boulevard and Felton Lane, and ... the intersection of Manhattan Beach Boulevard and Inglewood Avenue.” The police received complaints that the “day laborers who congregate at the subject intersections ... interrupt the flow of traffic while they contact employers from the City sidewalks and streets[,] ... commit acts of vandalism, litter, [and] urinate near the businesses” in the area.
The City adopted the proposed ordinance in May 1987. Following additional complaints about “the recurring gathering of day laborers along Artesia Boulevard,” who “congregated on the sidewalks during the rush hours to obtain temporary employment,” in 1989 the City added an additional subsection to the Ordinance prohibiting drivers from stopping in traffic to hire laborers. The Ordinance now reads in full:
(a) It shall be unlawful for any person to stand on a street or highway and solicit, or attempt to solicit, employment, business, or contributions from an occupant of any motor vehicle. For purposes of this section, “street or highway” shall mean all of that area dedicated to public use for public street purposes and shall include, but not be limited to, roadways, parkways, medians, alleys, sidewalks, curbs, and public ways.
*942 (b) It shall be unlawful for any person to stop, park or stand a motor vehicle on a street or highway from which any occupant attempts to hire or hires for employment another person or persons.
Redondo Beach Municipal Code § 3-7.1601.
In October 2004, the City initiated the “Day Labor Enforcement Project.” Over the course of two successive mornings, undercover officers posing as potential employers arrested thirty-five day laborers “for soliciting from stopped vehicles” under the Ordinance. Two weeks later, the police arrested another twenty-one day laborers under the Ordinance. Two weeks after that, four day laborers were arrested under subsection (a) of the Ordinance, and a contractor was arrested under subsection (b) of the Ordinance. Arrested persons either posted $100 bail and were released, or were sent to court, entered guilty pleas, sentenced to three years probation and a 180-day suspended sentence, assessed a $314 booking fee, and enjoined from coming within 150 yards of the place they were arrested.
B. Procedural Background
Shortly after the City’s 2004 enforcement efforts concluded, the Comité de Jornaleros de Redondo Beach (Comité) and National Day Laborer Organizing Network (NDLON) filed this lawsuit under 42 U.S.C. § 1983 and 28 U.S.C. § 2201.[1] Comité and NDLON (collectively, the Plaintiffs) alleged that the Ordinance is a facially unconstitutional restriction on day laborers’ and other persons’ First Amendment rights.
The district court agreed with the Plaintiffs, and issued a preliminary injunction barring the City from enforcing the Ordinance, which we affirmed on appeal. Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 127 Fed.Appx. 994 (9th Cir.2005) (unpublished memorandum disposition). After the parties filed cross-motions for summary judgment, the district court issued final judgment for the Plaintiffs. Comite I, 475 F.Supp.2d at 970. The court’s order permanently enjoined the City from enforcing the Ordinance, and required the City to rescind any “fines, penalties, or records of infractions” issued under the Ordinance (though the court later stayed enforcement of the latter part of its order.). Id. The court then awarded attorneys’ fees to the Plaintiffs.
Believing itself bound by ACORN, a merits panel of our court reversed the district court’s judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach (Comite II), 607 F.3d 1178 (9th Cir.2010), but we ordered that the case be reheard en banc, 623 F.3d 1054 (9th Cir.2010) (order). We now affirm the district court and overrule ACORN, but only to the extent it is inconsistent with our en banc decision in this case.
II. JURISDICTION AND STANDARD OF REVIEW
We have appellate jurisdiction under 28 U.S.C. § 1291. We review the district court’s grant of summary judgment de novo. Berger v. City of Seattle, 569 F.3d 1029, 1035, 1049 (9th Cir.2009) (en banc). In addressing the parties’ cross-motions for summary judgment, we must draw all reasonable inferences in favor of the non-moving party, and determine whether a genuine issue of material fact precludes entry of summary judgment. Fed.R.Civ.P. 56(a); Anderson v. Liberty Lob *943 by, Inc., 477 U.S. 242, 250, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
The City challenges the Plaintiffs’ Article III standing to pursue this action. We adopt the three-judge panel’s analysis as our own:
Redondo Beach makes the threshold argument that Comité and NDLON lack standing to challenge the ordinance. To have standing under Article III, a plaintiff must have suffered an “injury in fact,” defined as “an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent.” Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (citations and internal quotation marks omitted). There also must be a causal connection between the injury and the defendant’s conduct, and the injury must be redress-able by a favorable decision. Id. at 561, 112 S.Ct. 2130. Here Redondo Beach argues that Comite and NDLON fail to satisfy the Article III injury-in-fact requirement.
An organization may establish a sufficient injury in fact if it substantiates by affidavit or other specific evidence that a challenged statute or policy frustrates the organization’s goals and requires the organization “to expend resources in representing clients they otherwise would spend in other ways.” El Rescate Legal Servs., Inc. v. Executive Office of Immigration Review, 959 F.2d 742, 748 (9th Cir.1992); see also Fair Housing of Marin v. Combs, 285 F.3d 899, 904-05 (9th Cir.2002). But “standing must be established independent of the lawsuit filed by the plaintiff.” Walker v. City of Lakewood, 272 F.3d 1114, 1124 n. 3 (9th Cir.2001).
NDLON has met the burden to establish its standing as an organization. The record contains declarations of NDLON officials that enforcement of the Redondo Beach ordinance has frustrated NDLON’s mission “to strengthen and expand the work of local day laborer organizing groups” because it “has prevented day laborers from making their availability to work known in the City of Redondo Beach.” Moreover, the ordinance has discouraged both employees and employers from participating in hiring transactions. Redondo Beach has offered no evidence to dispute these claims. NDLON also has offered uncontradicted evidence that enforcement of the ordinance has forced it to divert resources, independent of expenses for this litigation, that it would have spent in other ways. NDLON’s west coast coordinator testified that she met with workers at the intersections targeted by Redondo Beach to discuss enforcement of the ordinance almost daily from the end of October 2004 until mid-December 2004, and weekly thereafter through June 2005. She also testified that she went to the police station to assist day laborers who had been arrested. NDLON’s national coordinator testified that the time and resources spent in assisting day laborers during their arrests and meeting with workers about the status of the ordinance would have otherwise been expended toward NDLON’s core organizing activities. In sum, NDLON has established a sufficient organizational injury for standing purposes. See El Rescate, 959 F.2d at 748.
Because there is a causal connection between Redondo Beach’s ordinance and NDLON’s injury, and NDLON’s injury would be redressable by a favorable decision, we conclude that NDLON has standing to bring this appeal. Accordingly, we have jurisdiction over this facial challenge irrespective of Comite’s standing. “Where the legal issues on appeal are fairly raised by one plaintiff *944 [who] had standing to bring the suit, the court need not consider the standing of the other plaintiffs.” Planned Parenthood of Idaho, Inc. v. Wasden, 376 F.3d 908, 918 (9th Cir.2004) (alteration in original) (internal quotation marks omitted). Therefore, we do not address the parties’ remaining standing arguments, including Redondo Beach’s evidentiary arguments.
Comite II, 607 F.3d at 1182-83.
We also reject the City’s belated contention that the Plaintiffs failed to allege standing adequately in their complaint. We exercise our discretion to conform the pleadings to the evidence submitted during summary judgment, which, as described supra, is adequate to establish standing in this case. See 28 U.S.C. § 1653 (“Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts.”); see also Chandler v. Miller, 520 U.S. 305, 313 n. 2, 117 S.Ct. 1295, 137 L.Ed.2d 513 (1997) (amending pleadings under 28 U.S.C. § 1653 to reject mootness argument).
III. DISCUSSION
A. Applicable Principles of First Amendment Law
Certain general principles of First Amendment law guide our analysis. ‘When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions.” United States v. Playboy Entm’t Grp., Inc., 529 U.S. 803, 816, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000). In a facial challenge to a law’s validity under the First Amendment, the “law may be invalidated as overbroad if ‘a substantial number of its applications are unconstitutional, judged in relation to the statute’s plainly legitimate sweep.’ ” United States v. Stevens, — U.S. -, 130 S.Ct. 1577, 1587, 176 L.Ed.2d 435 (2010) (quoting Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 449 n. 6, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008)). The party challenging the law need not necessarily introduce admissible evidence of overbreadth, but generally must at least “describe the instances of arguable overbreadth of the contested law.” Wash. State Grange, 552 U.S. at 449 n. 6, 128 S.Ct. 1184. The overbreadth doctrine exists “out of concern that the threat of enforcement of an overbroad law may deter or ‘chill’ constitutionally protected speech — especially when the overbroad statute imposes criminal sanctions.” Virginia v. Hicks, 539 U.S. 113, 119, 123 S.Ct. 2191, 156 L.Ed.2d 148 (2003).
Because of the Court’s concern about chilling protected speech, “[i]n the First Amendment context attacks have been permitted ‘on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity.’ ” Parker v. Levy, 417 U.S. 733, 759, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974) (quoting Dombrowski v. Pfister, 380 U.S. 479, 486, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965)). “Where .,. a statute imposes a direct restriction on protected First Amendment activity, and where the defect in the statute is that the means chosen to accomplish the State’s objectives are too imprecise, so that in all its applications the statute creates an unnecessary risk of chilling free speech, the statute is properly subject to facial attack.” Sec’y of State of Md. v. Joseph H. Munson Co., 467 U.S. 947, 967-68, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984) (footnote omitted); see also Members of the City Council of L.A. v. Taxpayers for Vincent, 466 U.S. 789, 800 n. 19, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984) (“[W]here the statute unquestionably attaches sanctions to protected conduct, the likelihood that the statute will deter that *945 conduct is ordinarily sufficiently great to justify an overbreadth attack.”).
Solicitation constitutes protected expression under the First Amendment. Int’l Soc’y for Krishna Consciousness, Inc. v. Lee, 505 U.S. 672, 677-78, 112 S.Ct. 2701, 120 L.Ed.2d 541 (1992) (citing United States v. Kokinda, 497 U.S. 720, 725, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990); Riley v. Nat’l Fed’n of the Blind of N.C., Inc., 487 U.S. 781, 788-89, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988); Heffron v. Int’l Soc’y for Krishna Consciousness, Inc. (Heffron), 452 U.S. 640, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981)). Solicitation “is characteristically intertwined with informative and perhaps persuasive speech seeking support for particular causes or for particular views on economic, political, or social issues,” so that “without solicitation the flow of such information and advocacy would likely cease.” Vill. of Schaumburg v. Citizens for a Better Env’t, 444 U.S. 620, 632, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980).[2]
Public streets and sidewalks “oeeupfy] a ‘special position in terms of First Amendment protection.’ ” Snyder v. Phelps, — U.S. -, 131 S.Ct. 1207, 1218, 179 L.Ed.2d 172 (2011) (quoting United States v. Grace, 461 U.S. 171, 180, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983)). They are “ ‘the archetype of a traditional public forum.’” Id. (quoting Frisby v. Schultz, 487 U.S. 474, 480, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988)). Because the Ordinance regulates protected speech in a public forum, we apply the “time, place, and manner” test: “the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions ‘are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.’ ” Ward v. Rock Against Racism, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) (quoting Clark v. Cmty. for Creative Non-Violence, 468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984)).
Having outlined these guiding principles, we now proceed to the “time, place, and manner” analysis described in Ward and numerous other cases. We assume for purposes of our decision that the Ordinance is content neutral. See City of Ladue v. Gilleo, 512 U.S. 43, 53 n. 11, 114 S.Ct. 2038, 129 L.Ed.2d 36 (1994) (“we set to one side the content discrimination question”).[3]
B. Construing the Ordinance
“The first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers.” United States v. Williams, 553 U.S. 285, 293, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008).
The City claims that the Ordinance can be construed to regulate only *946 solicitation conduct, not solicitation speech, such that the Ordinance only prohibits the acts of negotiating employment terms, entering a car, and exchanging money. We disagree with the City’s characterization of the Ordinance. The Ordinance applies to more than an actual physical exchange. “Solicitation” is defined broadly as “[t]he act or an instance of requesting or seeking to obtain something; a request or petition.” Black’s Law Dictionary 1520 (9th ed. 2009); see also Berger, 569 F.3d at 1090 n. 6 (N.R. Smith, J., concurring in part) (“A common dictionary defines ‘solicit’ as ‘to approach with a request or a plea (as in selling or begging) ... to endeavor to obtain by asking or pleading ....’” (quoting Webster’s Third New International Dictionary 2169 (unabridged ed. 1993))). In other words, “[a] solicitation is nothing more than a request in which the solicitor communicates, in some fashion, his desire that the person solicited do something, such as give money, join an organization, transact business, etc.” Berger, 569 F.3d at 1090 (N.R. Smith, J., concurring in part). On its face, the Ordinance applies both to those who “solicit” or who “attempt to solicit,” and it extends to the solicitation of “employment” and “business,” not just “contributions.” Redondo Beach Municipal Code § 3-7.1601(a) (emphasis added). In light of the Ordinance’s prohibition on the solicitation and attempted solicitation of employment and business, the Ordinance plainly addresses speech in addition to conduct.
The City argues that we should construe the Ordinance narrowly to apply only to solicitors who “cause motorists to stop in traffic lanes in response to the solicitation.” As support for this reading, the City submits (through its City Attorney’s affidavit) that it has applied the Ordinance only against individuals who cause motorists to stop in traffic, and that it has no intention of altering this practice. It is true that, when analyzing a “facial challenge, we must consider the [City]’s authoritative constructions of the ordinance, including its own implementation and interpretation of it.” Forsyth Cnty. v. Nationalist Movement, 505 U.S. 123, 131, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992). “Although we must consider the City’s limiting construction of the Ordinance, we are not required to insert missing terms into the statute or adopt an interpretation precluded by the plain language of the ordinance.” Foti v. City of Menlo Park, 146 F.3d 629, 639 (9th Cir.1998). Here, the plain language of the Ordinance, which prohibits solicitation by persons standing on a street or highway, is not reasonably susceptible to the City’s narrowing construction. See Reno v. ACLU, 521 U.S. 844, 884, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997) (“In considering a facial challenge, this Court may impose a limiting construction on a statute only if it is ‘readily susceptible’ to such a construction.” (quoting Virginia v. Am. Booksellers Ass’n, 484 U.S. 383, 397, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988))); Bd. of Airport Comm’rs v. Jews for Jesus, Inc., 482 U.S. 569, 575, 107 S.Ct. 2568, 96 L.Ed.2d 500 (1987) (refusing to adopt limiting construction where “the words of the resolution simply leave no room for a narrowing construction”). The City’s proposed “causation” requirement finds absolutely no support in the statutory text or the legislative history of the Ordinance.[4] We cannot simply “presume[ ] the [City] will act in good faith and *947 adhere to standards absent from the ordinance’s face.” City of Lakewood v. Plain Dealer Publ’g Co., 486 U.S. 750, 770, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988); see also Stevens, 130 S.Ct. at 1591 (“[T]he First Amendment protects against the Government; it does not leave us at the mercy of noblesse oblige. We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly.”).
The illogic of the City’s proposed limiting construction is revealed in a pair of hypothetieals submitted here and in the district court. The City states on appeal that the Ordinance would not apply to a person standing on the sidewalk holding a sign that says “Looking for work.” (Internal quotation marks omitted.) In the district court, the City asserted that the Ordinance would apply to a person standing on the sidewalk holding a sign that says “I’m available to be hired today, Please stop and talk to me.” (Internal quotation marks omitted.) The proposed distinguishing feature — please stop and talk to me — is wholly absent from the face of the Ordinance, and we cannot rewrite the Ordinance to supply the missing concept. See, e.g., Bd. of Airport Comm’rs of L.A. v. Jews for Jesus, Inc., 482 U.S. 569, 575, 107 S.Ct. 2568, 96 L.Ed.2d 500 (1987) (refusing to adopt limiting construction where “the words of the resolution simply leave no room for a narrowing construction”).
In sum, we are not bound by the City officials’ assurances that they have not, and will not, enforce the Ordinance against anything other than solicitations causing motorists to stop in traffic. Similarly, the Ordinance is not reasonably susceptible to the narrowing constructions proposed by the City. We therefore decline the City’s invitation to rewrite the statute’s plain language.[5]
C. Narrow Tailoring
“[A] regulation of the time, place, or manner of protected speech must be narrowly tailored to serve the government’s legitimate, content-neutral interests.” Ward, 491 U.S. at 798, 109 S.Ct. 2746. The regulation “need not be the least restrictive or least intrusive means of’ achieving the government’s goals, but it may not “burden substantially more speech than is necessary.” Id. at 798-99, 109 S.Ct. 2746. Put another way, the regulation must “focus[ ] on the source of the evils the city seeks to eliminate ... and eliminate[ ] them without at the same time banning or significantly restricting a substantial quantity of speech that does not create the same evils.” Id. at 799 n. 7, 109 5.Ct. 2746.
The City contends that the Ordinance is narrowly tailored to achieve the City’s “interest in promoting traffic flow and safety.”[6] It is undisputed that “[g]ov *948 ernmental authorities have the duty and responsibility to keep their streets open and available for movement.” Cox v. Louisiana, 379 U.S. 536, 554-55, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965); see also Heffron, 452 U.S. at 650, 101 S.Ct. 2559 (“[A] State’s interest in protecting the ‘safety and convenience’ of persons using a public forum is a valid governmental objective.”). It is also undisputed that traffic flow and traffic safety are a legitimate problem in certain parts of Redondo Beach.
The disputed issue is whether the Ordinance is narrowly tailored to further these valid purposes. To satisfy the narrow tailoring requirement, “the Government ... bears the burden of showing that the remedy it has adopted does not ‘burden substantially more speech than is necessary to further the government’s legitimate interests.’” Turner Broad. Sys., Inc. v. FCC, 512 U.S. 622, 665, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994) (quoting Ward, 491 U.S. at 799, 109 S.Ct. 2746). We conclude that the Ordinance is not narrowly tailored because the Ordinance restricts significantly more speech than is necessary, and because the City could have employed various less restrictive alternatives to achieve its goals.
The Plaintiffs have identified several “obvious examples” of prohibited speech that do not cause the types of problems that motivated the Ordinance. Watchtower Bible & Tract Soc’y of N.Y., Inc. v. Vill. of Stratton, 536 U.S. 150, 166, 122 S.Ct. 2080, 153 L.Ed.2d 205 (2002). The Ordinance “technically applies] to children selling lemonade on the sidewalk in front of their home, as well as to Girl Scouts selling cookies on the sidewalk outside of their school” and would prohibit “signbearers on sidewalks seeking patronage or offering handbills even though their conduct does not pose a traffic hazard,” Comite II, 607 F.3d at 1206 (Wardlaw, J., dissenting) (internal quotation marks omitted), as well as prohibit sidewalk food vendors from advertising their wares to passing motorists. The Ordinance applies “to a motorist who stops, on a residential street, to inquire whether a neighbor’s teen-age daughter or son would be interested in performing yard work or babysitting.” Comite I, 475 F.Supp.2d at 965. As the Plaintiffs observe, the Ordinance even applies to “school children shouting ‘carwash’ at passing vehicles,” and “protestors imploring donations to a disaster relief fund.”[7] Thus, because the Ordinance is significantly overinclusive, it is not narrowly tailored. *949 See, e.g., Watchtower Bible, 536 U.S. at 168, 122 S.Ct. 2080 (holding permitting requirement for all door-to-door solicitation to be “not tailored to the Village’s stated interests” because “[e]ven if the interest in preventing fraud could adequately support the ordinance insofar as it applies to commercial transactions and the solicitation of funds, that interest provides no support for its application to petitioners, to political campaigns, or to enlisting support for unpopular causes”).
The Ordinance is also geographically overinclusive. The Ordinance applies citywide to all streets and sidewalks in the City, yet the City has introduced evidence of traffic problems only with respect to a small number of major streets and medians. The City has offered no evidence to justify extending its solicitation ban throughout the City in such a sweeping manner. Because the burden rests on the City to submit evidence in support of its position, we cannot simply assume that the City’s other streets, alleys, and sidewalks allegedly suffer from similar solicitation-related traffic problems. By applying the Ordinance citywide to all streets, alleys, and sidewalks, the City has burdened substantially more solicitation speech than is reasonably necessary to achieve its purpose. See, e.g., Schneider v. New Jersey, 308 U.S. 147, 163, 60 S.Ct. 146, 84 L.Ed. 155 (1939) (invalidating anti-handbilling ordinances even though “their operation is limited to streets and alleys and leaves persons free to distribute printed matter in other public places”); cf. Hill, 530 U.S. at 730, 120 S.Ct. 2480 (“[T]he ... restriction occurs only within 100 feet of a health care facility — the place where the restriction is most needed.”); Frisby, 487 U.S. at 486-87, 108 S.Ct. 2495 (upholding picketing ban that was limited to residential areas of city, not entire city); Heffron, 452 U.S. at 652, 101 S.Ct. 2559 (upholding solicitation restriction that was limited to 125-acre fairground, not entire city); Grayned, 408 U.S. at 119-20, 92 S.Ct. 2294 (upholding anti-noise ordinance that was limited to school grounds during school hours). In fact, the Ordinance does not even distinguish between lawfully parked cars and cars moving in traffic, and there is no reason to believe (nor has the City provided evidence) that a lawfully parked car would create the types of traffic problems described by the City. Cf. ACORN, 798 F.2d at 1270 (affirming district court’s finding “that the mere presence of taggers on the roadway or intersection is a potential safety hazard” (internal quotation marks omitted)).
The impact of this overinclusiveness is particularly significant because the City has a number of less restrictive means of achieving its stated goals. Though we cannot apply a stringent least-restrictive-alternative test, we also cannot uphold the Ordinance if it “burden[s] substantially more speech than is necessary” to protect traffic safety and flow. Ward, 491 U.S. at 799, 109 S.Ct. 2746. The City has various other laws at its disposal that would allow it to achieve its stated interests while burdening little or no speech. The City need only enforce laws against jaywalking, Cal. Veh.Code § 21954, stopping in traffic alongside a red-painted curb,[8] id. § 22500(c), and stopping a car “so as to obstruct the normal movement of traffic,” id. § 22651(b). Or the City could enforce its own ordinances that provide that “[n]o person shall stand in any roadway, other than in a safety zone or in a crosswalk, if such action interferes with the lawful movement of traffic[,]” and “[n]o pedestrian shall stop or stand on a sidewalk except as near as is physically possi *950 ble to the building line or the curb line at any place in the Central Traffic District or any business district.” Redondo Beach Municipal Code §§ 3-7.1004, 1005. Even under the intermediate scrutiny “time, place, and manner” analysis, we cannot ignore the existence of these readily available alternatives. See, e.g., Vill. of Schaumburg, 444 U.S. at 637, 100 S.Ct. 826 (“The Village’s legitimate interest in preventing fraud can be better served by measures less intrusive than a direct prohibition on solicitation. Fraudulent misrepresentations can be prohibited and the penal laws used to punish such conduct directly.”); Schneider, 308 U.S. at 162, 164, 60 S.Ct. 146 (“There are obvious methods of preventing littering. Amongst these is the punishment of those who actually throw papers on the streets.... Frauds may be denounced as offenses and punished by law. Trespasses may similarly be forbidden. If it is said that these means are less efficient and convenient than bestowal of power on police authorities to decide what information may be disseminated from house to house, and who may impart the information, the answer is that considerations of this sort do not empower a municipality to abridge freedom of speech and press.”). As the Supreme Court has explained in the analogous commercial speech context, “if there are numerous and obvious less-burdensome alternatives to the restriction on commercial speech, that is certainly a relevant consideration in determining whether the ‘fit’ between ends and means is reasonable.” City of Cincinnati v. Discovery Network, Inc., 507 U.S. 410, 417 n. 13, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993); see also Lorillard Tobacco Co. v. Reilly, 533 U.S. 525, 554, 121 S.Ct. 2404, 150 L.Ed.2d 532 (2001) (noting that the “framework for analyzing regulations of commercial speech ... is ‘substantially similar’ to the test for time, place, and manner restrictions”) (quoting Bd. of Trs. of the State Univ. of N.Y. v. Fox, 492 U.S. 469, 477, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989)). Here, there are a number of feasible, readily identifiable, and less-restrictive means of addressing the City’s concerns.[9] The Ordinance is not narrowly tailored.
Although the City need not necessarily employ the ieasi-restrictive alternative, it may not select an option that unnecessarily imposes significant burdens on First Amendment-protected speech. “If the First Amendment means anything, it means that regulating speech must be a last — not first — resort.” Thompson v. W. States Med. Ctr., 535 U.S. 357, 373, 122 S.Ct. 1497, 152 L.Ed.2d 563 (2002). Because the Ordinance “suppresses] a great quantity of speech that does not cause the evils that it seeks to eliminate,” Ward, 491 U.S. at 799 n. 7, 109 S.Ct. 2746, it is facially invalid. We do not doubt that a *951 properly drawn ordinance could achieve the City’s goals; however, this Ordinance does not pass the test.[10]
IY. CONCLUSION
Because the Ordinance is not narrowly tailored to achieve the City’s goals, it is facially unconstitutional. The decisions of the district court invalidating the Ordinance, and awarding attorneys’ fees to the Plaintiffs, are
AFFIRMED.

. “Comité identifies itself as 'an unincorporated association comprised of day laborers who seek to defend their rights and address the difficulties that they face in seeking lawful employment as day workers.’ NDLON identifies itself as 'a nationwide coalition of day laborers and the agencies that work with day laborers.' ” Comite I, 475 F.Supp.2d at 955.

. The City does not argue that the Ordinance applies only to commercial solicitation, and its text does not limit its reach to the commercial context. Thus, we cannot, and do not, decide the Ordinance's validity under the Supreme Court’s “commercial speech” case law. See Comité II, 607 F.3d at 1184 n. 3. Nevertheless, the Dissent erroneously suggests that an “impromptu labor market ... is the subject of this lawsuit.” Dissent at 958. Perhaps the Dissent’s characterization would be tenable if the Plaintiffs had brought an as-applied challenge, or if the City had sought refuge under the commercial speech doctrine, but since neither of these possibilities occurred, we need not further consider the Dissent’s perspective on this issue.

. Because we conclude that the Ordinance is not a valid time, place, and manner restriction, we do not address the Plaintiffs’ alternative argument that the Ordinance is unconstitutionally vague.

. Apparently the Dissent agrees with us that the City's proposed interpretation is untenable. The Dissent’s lengthy statutory analysis fails to provide support for the City's proposed "causation” element. See Dissent at 960-63. Instead, the Dissent proffers a narrowing construction that does nothing to alleviate the Ordinance's overbreadth problems. See Dissent at 960-61. Our conclusion that the Ordinance is not narrowly tailored applies *947 regardless of whether or not we adopt the Dissent’s proposed construction.

. ACORN is overruled to the extent that it construed a substantially identically worded ordinance as facially restricting only solicitation conduct. (Our construction in ACORN remains viable with respect to its analysis of the ordinance as applied to ACORN’s conduct.) See ACORN, 798 F.2d at 1272 (agreeing with the district court that "there was no evidence to suggest that the Phoenix ordinance curtailed any activity other than solicitation from vehicles at an intersection”).

. Although the Ordinance may have been enacted in part to reduce public nuisances such as littering, vandalism, public urination, and harassment of pedestrians, the City does not argue on appeal that the Ordinance is narrowly tailored to achieve these goals. " 'We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim.' " Dennis v. BEH-1, LLC, 520 F.3d 1066, 1069 n. 1 (9th Cir.2008) (quoting Greenwood v. FAA, 28 F.3d 971, 977 (9th Cir.1994)).

. Contrary to the City's argument, we are not "hypothesizing about speculative unlawful applications” of the Ordinance; we are simply listing some of the many types of protected speech that fall squarely within the plain language of this facially overbroad law.
As noted supra, although the Supreme Court stated in Washington State Grange that, "[i]n determining whether a law is facially invalid, we must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary’ cases,” the Court acknowledged in a footnote that First Amendment overbreadth challenges are subject to a less-demanding standard, which requires only that "the parties ... describe the instances of arguable overbreadth of the contested law.” 552 U.S. at 449-50 & n. 6, 128 S.Ct. 1184. If the suggested examples fall within the plain language of the statute, the Plaintiffs have met their burden. See, e.g., City of Houston v. Hill, 482 U.S. 451, 466-67, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987) ("Houston's ordinance criminalizes a substantial amount of constitutionally protected speech, and accords the police unconstitutional discretion in enforcement. The ordinance’s plain language is admittedly violated scores of times daily, yet only some individuals — those chosen by the police in their unguided discretion — are arrested. Far from providing the 'breathing space’ that 'First Amendment freedoms need to survive,’ the ordinance is susceptible of regular application to protected expression.” (ellipsis omitted) (quoting NAACP v. Button, 371 U.S. 415, 433, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963))).

. The City acknowledges that "the lanes nearest the curb[s of the intersections at issue] are traffic lanes, posted with 'No Stopping Anytime' signs.”

. The Dissent incorrectly asserts that "city authorities have tried for years to use other laws to deal with day laborers.” Dissent at 963. First, the Dissent quotes Sergeant Contreras’s statement that "warnings” and "[r]andom enforcement” were "ineffective.” But read in context, Sergeant Contreras’s statement refers to the City's enforcement of the Ordinance itself, not other laws. The same goes for the evidence of business leaders’ complaints. See Dissent at 963-64.
The Dissent also quotes City Attorney Webb’s statement that the City's "enforcement of other applicable laws” was "largely unsuccessful.” Dissent at 963. But the district court held this statement inadmissible because Webb failed to establish his personal knowledge of this fact. Comite I, 475 F.Supp.2d at 970. Contrary to the Dissent's selective reading of the Federal Rules of Civil Procedure, Rule 56 explicitly requires that summary judgment affidavits "be made on personal knowledge.” Fed.R.Civ.P. 56(c)(4); see also, e.g., Shakur v. Schriro, 514 F.3d 878, 890 (9th Cir.2008) (“[Cjonclusory affidavits that do not affirmatively show personal knowledge of specific facts are insufficient.” (internal quotation marks omitted)).

. The dissent urges us to sever the offending provision of this statute, so as to strike down subsection (a), which applies to the day laborers, and leave intact subsection (b). Dissent at 957-58. Because the City has waived any argument regarding severability by failing to raise it in its briefs or at oral argument, we do not consider it here. See, e.g., Legal Servs. Corp. v. Velazquez, 531 U.S. 533, 549, 121 S.Ct. 1043, 149 L.Ed.2d 63 (2001); United States v. City of Areata, 629 F.3d 986, 992 (9th Cir.2010).
The City has also waived any objections regarding the vagueness of the district court’s injunction. United States v. Bowen, 172 F.3d 682, 689 (9th Cir.1999).