**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JUL 08 2013

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

DAVID K. MEHL; et al.,

   Plaintiffs - Appellants,

 and

FRANK FLORES,

   Plaintiff,

 v.

LOU BLANAS; et al.,

   Defendants - Appellees.

No. 08-15773

D.C. No. 2:03-CV-02682-MCE-KJM

MEMORANDUM[*]

Appeal from the United States District Court
for the Eastern District of California
Morrison C. England, Chief District Judge, Presiding

Argued and Submitted December 10, 2012
Pasadena, California

Before: SCHROEDER, ROTH[**], and BERZON, Circuit Judges.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**] The Honorable Jane R. Roth, Senior Circuit Judge for the U.S. Court of Appeals for the Third Circuit, sitting by designation.

California generally prohibits the carrying of concealed firearms, *see* Cal. Penal Code § 25400, but provides for county sheriffs to license individuals to carry concealed firearms pursuant to certain requirements, *see id.* §§ 26150 *et seq.*[1] During the tenure of former Sheriff Lou Blanas, plaintiffs unsuccessfully applied to the Sacramento County Sheriff's Department for concealed-carry licenses. They contend that Sacramento County's implementation of the California concealed-carry licensing scheme, as applied to them, violated the Equal Protection Clause of the Fourteenth Amendment.[2]

**1.** Plaintiff Mehl lacks standing to challenge Sacramento County's concealed-carry policies, because he failed fully to complete the county's application process as directed, even after he was informed of the deficiencies. "[A] plaintiff lacks standing to challenge a rule or policy to which he has not submitted himself by actually applying for the desired benefit." *Madsen v. Boise*

---

[1] At the time this appeal was filed, the relevant provisions were codified at Cal. Penal Code § 12025 and § 12050 *et seq.* Pursuant to the Deadly Weapons Recodification Act of 2010, the provisions were recodified effective January 1, 2012. *See* Cal. Penal Code § 16005. The recodification was not "intended to substantively change the law relating to deadly weapons." *Id.* We, therefore, cite throughout to the recodified Penal Code.

[2] At oral argument, plaintiffs clarified that they are not challenging California's concealed-carry ban or licensing scheme as violative of the Second Amendment. Plaintiffs' counsel stated: "This is more of an equal protection case. But the Second Amendment issue comes into play because it involves a fundamental right under the Equal Protection Clause."

*State Univ.*, 976 F.2d 1219, 1220 (9th Cir. 1992) (per curiam). We, therefore, affirm the district court's grant of summary judgment in favor of the defendants as to all of Mehl's claims.

**2.** Unlike Mehl, plaintiff Lau did complete and submit the concealed-carry license application form. He therefore does have standing with regard to his contention that the Sheriff's Department impermissibly discriminated by issuing concealed-carry licenses to Blanas's political supporters while denying them to non-supporters.

Lau argues that a strict scrutiny standard applies to equal protection claims concerning the right to carry firearms, relying on *District of Columbia v. Heller*, 554 U.S. 570 (2008), as establishing that right as fundamental. *See Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307, 313 (1976) ("[E]qual protection analysis requires strict scrutiny . . . when the classification impermissibly interferes with the exercise of a fundamental right."). Even if Lau is correct as to the level of scrutiny — which we do not decide — viewing the evidence in the light most favorable to Lau as the nonmoving party, there is no genuine issue for trial on his claims. *See Balint v. Carson City, Nev.*, 180 F.3d 1047, 1054 (9th Cir. 1999) (en banc).

For "state action to trigger equal protection review at all, that action must treat similarly situated persons disparately." *Silveira v. Lockyer*, 312 F.3d 1052,

3

1088 (9th Cir. 2002), *abrogated on other grounds by Heller*, 554 U.S. 570.

Although Lau offered evidence that some supporters of Blanas received concealed-carry licenses, he did not present evidence that applications of similarly situated non-supporters were routinely rejected. To the contrary, the record evidence shows that over 200 non-contributors received licenses during Blanas's tenure, while several Blanas donors had their applications denied or, when they made inquiries to Blanas directly, were told they must apply through the regular application process.

Nor is Lau's own application a useful comparison. Lau stated in his application that he needed a concealed-carry license due to lingering dangers from his services as an FBI agent. But Lau also submitted documents to the Sheriff's Department in which the FBI stated that it was "not aware" of any lingering dangers to Lau's safety. Also, the committee that reviewed Lau's application unanimously agreed to deny his application and noted that he had "too many issues," an assessment with support in the record concerning problems during his FBI career and his subsequent disability status. Lau did not present any evidence that similarly situated Blanas supporters — i.e., applicants whose own application materials included third-party statements negating their purported reasons for

4

needing to carry a concealed firearm *and* a substantive basis for rejecting the application — received concealed-carry licenses.

**3.** Lau also maintains that Sacramento County impermissibly discriminated in denying him a concealed-carry license because, under the retired-officer exception to the concealed-carry licensing requirement, *see* Cal. Penal Code § 25450, honorably retired California peace officers may carry concealed firearms without a license. As to this issue, Lau lacks standing, as he does not explain how he has suffered any "injury in fact" as a result of that exception. *See United States v. City of Arcata*, 629 F.3d 986, 989 (9th Cir. 2010). Lau is not seeking to invalidate the concealed-carry licensing requirement itself, and there is nothing in the record to suggest that the decision on Lau's licensing application would have been any different had there been no retired officer exception.

**AFFIRMED.**