*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0225p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

THE CONTRIBUTOR; CALVIN HART; ANDREW HARRINGTON,

> *Plaintiffs-Appellants*,

*v.*

CITY OF BRENTWOOD, TENNESSEE,

> *Defendant-Appellee.*

No. 12-6598

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:11-cv-00624—Todd J. Campbell, Chief District Judge.

Argued: July 26, 2013

Decided and Filed: August 14, 2013

Before: KEITH and McKEAGUE, Circuit Judges; WATSON, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Irwin B. Venick, DOBBINS, VENICK, KUHN & BYASSEE, PLLC,Nashville, Tennessee, for Appellants. Robert M. Burns, HOWELL & FISHER, PLLC, Nashville, Tennessee, for Appellee. **ON BRIEF:** Irwin B. Venick, DOBBINS, VENICK, KUHN & BYASSEE, PLLC,Nashville, Tennessee, Susan L. Kay, Nashville, Tennessee, Thomas H. Castelli, AMERCIAN CIVIL LIBERTIES UNION FOUNDATION OF TENNESSEE, Nashville, Tennessee, for Appellants. Robert M. Burns, C. Mark Harrod, HOWELL & FISHER, PLLC, Nashville, Tennessee, for Appellee.

_____

[*]The Honorable Michael H. Watson, United States District Judge for the Southern District of Ohio, sitting by designation.

---

**OPINION**

---

McKEAGUE, Circuit Judge.  Calvin Hart and Andrew Harrington were vendors for *The Contributor*, a newspaper written and sold by homeless and formerly homeless persons.  While standing on the sidewalk in Brentwood, Tennessee, attempting to sell issues of *The Contributor*, Hart and Harrington were issued citations by City of Brentwood police officers.  Fearing the ordinance was unconstitutional, the City revised it.  The revisions did not satisfy Plaintiffs.  They contend that the revised ordinance is unconstitutional because it does not leave open adequate alternative channels of communication for their speech.  The district court disagreed.  We now affirm.

## I.

### A.

The facts in this case are not in dispute.  *The Contributor* produces a street newspaper to educate people about homelessness and poverty.  The newspaper also helps develop job skills for homeless and formerly homeless persons by employing them as street vendors of *The Contributor*. Plaintiffs Calvin Hart and Andrew Harrington are two such vendors.

In January 2011, Hart and Harrington attempted to sell issues of the newspaper in the streets and on the sidewalks of Brentwood, Tennessee.  They were issued citations by Brentwood police officers for violating Brentwood Municipal Code section 58-1.  At the time, ordinance 58-1 provided that no person could use or occupy any portion of the city street, alley, sidewalk or the public right-of-way to sell any goods or materials.  Hart and Harrington were each fined $125.

Fearing that this particular version of the ordinance was unconstitutional, the City revised it.  As relevant here, the revised ordinance ("the Ordinance") provides as follows:

(e)     Nothing in this section or in any other part of this Code shall be construed as prohibiting the sale or distribution of newspapers, magazines, periodicals, handbills, flyers or similar materials, except that:
(1)     Such activity shall be prohibited on any portion of any street within the city.
(2)     Such materials shall not be handed to the occupant of any motor vehicle that is on a street, nor shall any action be taken which is intended or reasonably calculated to cause the vehicle occupant to hand anything to the person selling or distributing the materials.

Brentwood Municipal Code Ordinance 58-1.

In enacting the Ordinance, the City relied on a letter from its attorney explaining the changes, a letter from a traffic consultant, and a summary of the revisions, as well as common sense and personal experience. The Ordinance went into effect on July 29, 2011.

Hart and Harrington have not sold issues of *The Contributor* in Brentwood since the Ordinance took effect because they fear that they will be fined under the Ordinance. They allege that they would sell issues directly to motor-vehicle occupants but for the Ordinance. *The Contributor* alleges that it would like to expand sales into Brentwood but has not done so out of fear that its vendors will be cited under the Ordinance. Plaintiffs brought suit to enjoin the enforcement of the Ordinance, claiming that the law violates their First Amendment rights.

**B.**

In the court below, Plaintiffs alleged that the Ordinance was a content-based restriction on protected speech that was not necessary to a compelling government interest. They argued in the alternative that if the court found the law was a content-neutral regulation, the law was not narrowly tailored to serve a significant governmental interest and did not leave open adequate alternative channels of communication.

On cross-motions for summary judgment, the district court ruled in favor of the City. The district court found that the ordinance was a content-neutral regulation of a traditional public forum. Further, the court found that the ordinance was enacted with

a sufficient factual basis and was a reasonable time, place, and manner restriction promoting a substantial government interest. The court determined that the law was narrowly tailored because the City's "achievement of the goals of traffic safety and flow would be significantly less effective without this regulation." The court concluded that the law left open adequate alternative channels of communication. The court found that *The Contributor* could sell its newspapers "door-to-door, through subscriptions, on private property with permission, to pedestrians on sidewalks, or in appropriately placed news racks." This appeal followed.

**II.**

We review the district court's grant of summary judgment *de novo*. *Jacob v. Twp. of W. Bloomfield*, 531 F.3d 385, 388 (6th Cir. 2008). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

On appeal, Plaintiffs have abandoned most of the arguments they made below. They concede that the law is a content-neutral time, place, and manner restriction of a traditional public forum. Such a law comports with the First Amendment if (1) it serves a significant government interest; (2) it is narrowly tailored to that interest; and (3) it leaves open adequate alternative channels of communication for the information. *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (internal quotation marks omitted). Plaintiffs concede that the law serves a significant public interest and is narrowly tailored to that interest. Our review is therefore limited to determining whether the law leaves open adequate alternative channels of communication.

Plaintiffs make three points in arguing it does not. Primarily, they argue that the alternatives are inadequate because the Ordinance acts as a "*de facto* forum closure and leaves open only alternatives that are not used by a unique publication such as *The Contributor*." In other words, they argue that street sales to motor-vehicle occupants are the only adequate form of communication for a unique publication such as *The Contributor*. Second, they argue that the City was required to present evidence that the

proffered alternatives would be adequate.  Third, they argue that because the Ordinance completely closes a public forum, it does not leave open adequate alternative channels of communication.  We consider each argument in turn.

**A.**

The City suggested five alternative avenues of communication in the court below: mail subscriptions; email distribution; news boxes; sales to pedestrians on sidewalks; and door-to-door sales.  During oral argument before this Court, it offered two more: sales in city parks and in front of churches.  We have previously held that pedestrian sales and door-to-door solicitation are adequate alternative channels of communication.  *See Jobe v. City of Catlettsburg*, 409 F.3d 261, 270 (6th Cir. 2005).  Plaintiffs do not contend that they could not use news boxes, mail subscriptions, or email distribution.    These alternatives are therefore potential alternative avenues of communication.  But are they adequate?

An alternative channel of communication can be adequate even when the speaker is denied its best or favored means of communication. *Phelps-Roper v. Strickland*, 539 F.3d 356, 372 (6th Cir. 2008).  The key for purposes of the adequate-alternatives analysis is whether the proffered alternatives allow the speaker to reach its intended audience. *Id.* (discussing ability to reach intended audience); *Prime Media, Inc. v. City of Franklin*, 181 F. App'x at 536, 541 (6th Cir. 2006).  Plaintiffs rely upon cases that illustrate this point.

In *Weinberg v. City of Chicago*, 310 F.3d 1029 (7th Cir. 2002), the Seventh Circuit struck down a law prohibiting the distribution of written material within 1000 feet of the United Center, the site of the Chicago Blackhawks' home games.  Weinberg wanted to sell copies of his book—which excoriated the Blackhawks' former CEO—at the United Center before hockey games.  The Seventh Circuit held that the law did not leave open adequate alternative channels of communication—Weinberg wanted to target Blackhawks' fans specifically, and they represent "a fundamentally different market than the market for bookstore readers or Internet users." *Id.* at 1042.  The

alternatives were inadequate because they "require[d] Herculean efforts by Weinberg or his customers to complete the sale." *Id.* That is, because the alternatives did not allow Weinberg to reach his intended audience without tremendous effort, the law did not leave open adequate alternative channels of communication.

In *Comite De Jornaleros De Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 956 (9th Cir. 2011) (en banc), the ordinance at issue effectively barred day laborers from congregating anywhere in the city for the purpose of obtaining temporary employment. The majority in *Redondo Beach* did not address whether the ordinance left open adequate alternative channels of communication. But in two concurrences, Judges Gould and Smith contended that it did not. Judge Gould believed that the City of Redondo Beach needed to designate a permissible area for day laborers to congregate. *Id.* at 951. Judge Smith, joined by Judge Thomas, concluded that the city had to provide evidence establishing that the proffered alternatives were adequate and would not substantially increase the costs of obtaining employment. *Id.* at 955. Soliciting pedestrians and door-to-door canvassing were simply inadequate. *Id.* at 956. In dissent, Judge Kozinski, joined by Judge Bea, argued that there were adequate alternatives: day laborers could advertise via newspaper or on Craigslist and could go to day-laborer centers. Judge Kozinski concluded that the inconvenience of these alternatives did not render them inadequate. *Id.* at 967.

The key distinction between *Weinberg* and *Redondo Beach* and this case is the speakers' ability to reach the intended audience. A day laborer wants to find a person who will hire him. Absent an area to meet with potential employers, the day laborer is potentially left going door-to-door or soliciting pedestrians on a needle-in-a-haystack search for work. A person selling a book decrying the reign of the Blackhawks former CEO wants to find other Blackhawks' fans who dislike the person or those that might be so persuaded. Absent an opportunity to meet with Blackhawks' fans where they congregate—the arena where the Blackhawks play—it would be difficult to reach the intended audience.

Plaintiffs' intended audience, on the other hand, is the general citizenry of Brentwood. Plaintiffs can easily reach this audience by going door-to-door, by seeking out people on sidewalks, or by distributing *The Contributor* via the mail, email, and news boxes. Plaintiffs offer no reason to suggest they cannot reach their intended audience by employing the City's proffered alternatives. Additionally, if Plaintiffs wish to engage in the desired face-to-face interaction with people, they may do so by going door-to-door or by seeking out pedestrians. Plaintiffs can also interact with motor-vehicle occupants from the sidewalk, so long as they do not step into the road to sell a newspaper or otherwise violate the Ordinance.

Instead, Plaintiffs argue that door-to-door sales are inadequate for two reasons. First, Plaintiffs argue that door-to-door sales provide an inadequate alternative because of the City's Peddler Ordinance. Specifically, Plaintiffs argue that the Peddler Ordinance is unduly restrictive because it requires *inter alia* two references to attest to the peddlers moral reputation and business responsibility; proof that the person has not been convicted of a municipal ordinance; and payment of a $1000 bond. If the Peddler Ordinance applied, door-to-door sales might not be an adequate alternative means of communication.

But it does not apply. Ordinance 18.84 exempts "newsboys" and "bona fide charitable . . . organizations" from the Peddler Ordinance. *The Contributor* is a charitable organization: it is listed as a 501(3)(c) charitable organization. Its street vendors are newsboys: "one who delivers or sells newspapers at retail." *Webster's Third New Int'l Dictionary* 1524 (1984). Therefore, by its terms the Peddler Ordinance does not apply to Plaintiffs, and they cannot contend that door-to-door sales are an inadequate alternative means of communication based on the Peddler Ordinance.

Second, Plaintiffs argue that door-to-door sales is an inadequate alternative because it would require a change in sales tactics and require Plaintiffs to foist themselves upon people. But an alternative is not inadequate simply because the speaker must change its tactics. If this were so, then a speaker could limit the adequacy of alternatives by choosing its method of communication and limiting its tactics to a

specific form of communication.  Such a rule would largely deprive the government of the ability to enact reasonable time, place, and manner restrictions.

Because Plaintiffs can easily reach their intended audience, the Ordinance leaves open adequate alternative channels of communication.

**B.**

Plaintiffs' other arguments merit little discussion.  They argue that the city must offer proof that the alternatives will be adequate.  But we have never placed an onerous burden on a municipality to prove the adequacy of alternative channels of communication.  Instead, we have only required a municipality to proffer a list of potential alternative avenues of communication that are reasonable and made in good faith.  *See Prime Media, Inc.*, 181 F. App'x at 541 ("intended audience . . . can be reached through newspapers, radio, television, smaller signs . . . , and other traditional means of communication (such as leafletting)"); *Jobe*, 409 F.3d at 270.  A plaintiff may then counter the government's proof by "showing that the remaining avenues of communication are inadequate."  *Ward*, 491 U.S. at 802; *see also Prime Media, Inc.*, 181 F. App'x at 541 ("Prime Media has presented no evidence that these alternatives are inadequate to convey its messages").  Plaintiffs have wholly failed to offer any evidence to make this showing.  Instead, they argue that face-to-face interaction is intertwined with the newspaper's message and therefore traditional modes of distribution are inadequate.  But this is simply a rehash of their argument above that the only adequate means of communication is their preferred means of communication, an argument we rejected.

Plaintiffs also argue that when an entire forum is closed to certain speech activity, a government restriction does not leave open adequate alternative means of communication.  The cases cited by Plaintiffs do not support such a broad statement.  In those cases, it was not the fact that *a public forum* was closed that made the law unconstitutional; instead, it was the fact that *all public fora* were closed to the plaintiffs.  *Loper v. New York City Police Dept.*, 999 F.2d 699, 701–03 (2d Cir. 1993); *Bery v. City of New York*, 97 F.3d 689, 698 (2d Cir. 1996).  Plaintiffs, on the other hand, have public

fora to which they might turn (including public areas where they can place news boxes; the Internet; and pedestrian sales on sidewalks).  Because Plaintiffs have failed to show that the proffered alternatives are inadequate, we conclude that the Ordinance leaves open adequate alternative channels of communication.

## III.

It might be easier for *The Contributor* and its street vendors to return to its practice of selling to motor-vehicle occupants, but "there has been no showing that the remaining avenues of communication are inadequate."  *Ward*, 491 U.S. at 802.  We therefore **AFFIRM** the decision of the district court.